# Appeal of Carl *et al.*

| | | | |
|---|---|---|---|
| 106 | 635 | | |
| 168 | 430 | | |
| 106 | | | 635 |
| 204 | | | 486 |

1. The prohibition of the Act of April 26, 1855, (P. L. 332), invalidating all bequests, devises and conveyances made to charities within one calendar month of the giver's death, relates and applies only to the physical act of executing the deed or will, and not to the date, from which for certain purposes and in the fiction of the law, the will is presumed to speak.

2. Where, therefore, a testator made a bequest of his residuary estate to a charity more than one calendar month prior to his death, and afterwards within a calendar month of his death, he executed a codicil which diminished the said bequest by otherwise disposing of certain portions of his estate,

　*Held*, That the codicil did not so far republish the will and make it speak as of the date of the codicil, as to invalidate the bequest to the charity under the Act of 1855.

May 22, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the Orphans' Court of *York county :* Of July Term, 1884, No. 72.

This was an appeal by Adam Carl et al., heirs at law and next of kin of Christiana M. Lohr, deceased, from a decree of the said court, dismissing their exceptions to and confirming the report of an auditor, appointed to audit the account and distribute the balance found to be in the hands of Rufus A. Eichelberger and John Carl, executors of the last will of the said Christiana M. Lohr.

Before the auditor (S. H. Forry, Esq.) it appeared that Christiana M. Lohr died April 4, 1881, leaving no lineal descendants. By her will, dated September 6, 1877, after making numerous devises and bequests to various collateral relatives, she gave and bequeathed the income of certain stock and bonds and the residue of her estate, both real and personal, to the Home and Foreign Missionary Society of the United Brethren in Christ, an organization incorporated under the laws of the State of Ohio. On March 14, 1881, she executed a codicil to her will, by which in addition to making a change in the executors of her will and providing for the payment of an additional sum to certain relatives, she bequeathed to her niece, Susan Weigle, a certain house and lot of ground, with the furniture therein, on the condition that the said Susan Weigle should board and maintain the preacher or preachers of the Church of the United Brethren in Christ at Hanover, Pa., and in default of such condition she directed that the property so devised and bequeathed should be sold and the proceeds paid over to the Home and Foreign Missionary Society above mentioned.

It further appeared by the final account of the executors that after providing for the various devises and bequests contained in the will and codicil a balance of over $12,000 remained for further distribution.    This residue was claimed, on the one hand, by the Home and Foreign Missionary Society as the residuary legatee, and on the other hand by the decedent's next of kin under the Intestate Laws.    The latter contended that the codicil republished the will and made it speak as of the date of the codicil, and that as the latter was executed less than thirty days before the death of the decedent, the bequests made in it and the will (they both constituting but one instrument and speaking as of the date of the codicil) to charities were void under the Act of April 26, 1855, § 11, (P. L. 332); that, therefore, the bequest of the residuary estate contained in the will being void, they, the decedent's next of kin, were entitled to the residue under the Intestate Laws.

The auditor awarded to the Home and Foreign Missionary Society the residue of the estate.    Exceptions to this award, filed by Adam Carl et al., the decedent's next of kin, were dismissed by the court and the auditor's report confirmed, GIBSON, J. filing the following opinion:—

By the first section of the Act of 4 June, 1879, P. L. 88, it is enacted as follows:    " That every will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will."    Hence, by parity of reasoning, if the period from which a will speaks is to govern, in such a case as this, there can be no devise or bequest to a charitable use ever made, for the Act says a will shall " take effect as if it had been executed immediately before the death of the testator."    This first section of the Act of 1879, is an exact transcript of the British Statute, 1 Victoria C. 26, (1837). It is said in Jarman on Wills, 186*, 291*, that the statute relates to the subject of the devise or bequest and not to the objects of the gift, and, therefore, so far as our Act of Assembly is concerned, it may be said, that it is the object that is, under the conditions prescribed by the Act of 1855, exhibited, and prevented from taking the bequest.    But let us look at what is meant by the period from which a will speaks.    That phrase had relation, for instance, at one time, to the capacity of the testator to pass by a general gift his real and personal estate, and, accordingly, such a gift, in regard to the real estate, was read as a gift of the property belonging to the testator at the time of the execution of his will (he being incapable of devising any other,) and as to the personalty, as a disposition of what he might happen to possess at the

period of his decease: Jarman, 287. Thus it appears that as regards general bequests, wills always did speak from the death of the testator. As regards general devises of real estate, we have had since the Act of 8th April, 1833, a provision that after acquired real estate shall pass by a will. The 11th section of that Act has been cited by text writers as an equivalent to the 24th section of the British statute, Jarman, 288*, *n.* Why it was thought necessary by the legislature to enact, so late as the year 1879, the words of that 24th section, I do not know: to all intents and purposes our reforms in the matter of wills had preceded theirs. At any rate it has always been understood as a general rule that a will speaks from the death of the testator, unless its language indicates a contrary intention.

The question recurs then to the effect of the republication of a will by a codicil. There is a class of cases about which there can be no contention, such as Neff's Appeal, 12 Wright, 501, in which the question was whether the codicil revoked a second will and republished an earlier will on which it was written. To the same effect in principle is Linnard's Appeal, 12 Norris, 313. But we find that in all other cases, since the modern statutes of wills, which may arise out of the execution of a codicil, questions regarding the intention of the testator are involved to such an extent as to qualify the rule invoked here materially. Instances of this are shown in the cases of Coale *v.* Smith, 4 Barr, 376, and Alsop's Appeal, 9 Id., 374, in both of which the opinions were delivered by Mr. Justice BELL. In the last mentioned case this distinction is shown: that though for some purposes a will and codicil are to be regarded as making but one testament, they will not be considered as a single instrument where a manifest intention requires otherwise.

An instance of a codicil and will being separate instruments and one testament is illustrated in the cases of Hamilton's Estate, 24 P. F. S., 69, and Bradish *v.* McClellan, 4 Out., 607. In the latter case the codicil was held to attach itself to whichever of two wills became operative in a certain contingency. In the former case the same codicil was held not to affect the charitable bequests in the will, which was declared operative by the codicil. That the later will was prevented by the codicil from being a revocation of the earlier will. That the earlier will was never republished because it was never revoked by the later will, and therefore it spoke from its date. This is the idea suggested above as to the principle of Neff's Appeal and the effect of a codicil in republishing a will that would otherwise be revoked. The first will in Hamilton's estate would have been revoked by the second will but for the codi-

cil which gave it life, and yet it did not affect the validity of the charitable bequests in the first will. This could be only on the ground of its being a separate instrument. Bradish *v.* McClellan held the codicil to be part of the same testament as the first will, and I understand the court not to question the validity of the charitable bequests, but to affirm the decision, for the remark is made that they were held valid without comment. The question was directly in view of the court, though not before them. Hamilton's Estate does not ignore the power of the codicil to put in force the first will, but declares it a separate instrument from it. Bradish *v.* McClellan only declares the codicil a part of the same testament as the first will.

The question raised here as to the period from which this will speaks, based upon the doctrine of republication by a codicil, would make void the charitable bequest given by the original will, contrary to the intention of the testatrix. The very act of republication, *ipso facto*, would make null and void that which republication by intendment of law reaffirms. I think the validity of the residuary bequest, above quoted from the will, and under which the auditor makes his award, is not affected in any way by the codicil, and that it does not bring the bequest within the prohibition of the Act of 1855.

The exceptants thereupon took this appeal, assigning as error the confirmation of the auditor's report.

*W. C. Chapman* (with him *C. W. Wolff*), for the appellants. —It was the settled law of both England and America long before the enactment of 1 Vict., c. 26, that the addition of a codicil to a will operated as a republication of the will, so as to make the whole speak from the date of the codicil. By republishing a will was meant repeating, either expressly or by construction, the formal declaration which, before January 1, 1838 (the date when the above statute took effect), used to be made by a testator at the time of signing his will, that the document signed was his last will and testament. Express republication occurs where a testator repeats those ceremonies which are essential to constitute a valid execution with the avowed design of republishing the will. Constructive republication takes place where a testator, for some other purpose, makes a codicil to his will, in which case the effect of the codicil, if not neutralized by internal evidence of a contrary intention, is to republish the will. By this means, under the old law, lands of inheritance, acquired since the execution of the will, were often brought within the operation of any general or residuary devise contained in such will, and that, too, though it was not annexed to, or declared to be a part of, and did not in terms

confirm the will, and whether the codicil related to real estate or personalty only, the result being precisely the same as if the general or residuary devise had been incorporated into the codicil itself: 1 Jar. on Wills (Ed. 1880), 362. A will and codicil are therefore to be read as if they constituted but one instrument, and had been made at the same time, to wit, the time of the execution of the codicil: 1 Williams on Ex., p. 7, n. 1; Neff's Appeal, 12 Wr., 501; Linnard's Appeal, 12 Norris, 313. Thus it has been held that a duly executed codicil validated and gave effect to a paper, which purported to be a will, but which had never been signed, published or attested as a will, and that the codicil operated to give effect to both instruments as constituting one will. A codicil must be construed " as if the testator had inserted therein all the words of the will: " Lord ABINGER, in Doe d. York v. Walker 12 M. & W., 597.

Applying these well settled principles to this case, it is clear that the testatrix's codicil republished her prior will, made it speak from the date of the codicil, and incorporated it therein, thus making both papers but one instrument, which bore date March 14, 1881, and the subsequent death of the testatrix in less than thirty days thereafter avoided the devise of the residuary estate to a charity under the plain provisions of the Act of 1855. If any doubt exists on this question, it should be resolved in favor of the next of kin, for the reason that the moral sense of the people, the policy of the law and the spirit of the Act of 1855 are alike set sternly against death-bed charities such as this.

It but remains to discuss the effect of the Act of June 4, 1879, (P. L. 88) upon the construction of this will. The court below erred in its opinion in holding that " by a parity of reasoning if the time from which a will speaks is to govern in such a case as this, then there can be no devise or bequest to a charitable use ever made, for the Act says a will shall ' take effect as if it had been executed immediately before the death of the testator.' " Why cannot there be a devise or bequest to a charitable use? The Act leaves it expressly in the power of the testator whether in a will, with or without a codicil, to say that it is his intention that the will or codicil shall speak or take effect from any date, or any specific time. The testator can manifest a contrary intention in his will or in a codicil in any form he pleases. It is only where he *does not* manifest a contrary intention, as in this case, that the statute in terms applies, and makes the will speak as if it had been executed immediately before his death. We are not aware of any decision in this state, exactly in point with this case; but the construction here insisted on is supported by

cases in England under the statute of Mortmain, 9 Geo. II., c. 36. Testator made his will in December, 1734, before the statute, and devised all the residue of his personal estate to be laid out in land and settled to certain charitable uses, and had confirmed that will by a codicil made in July, 1739, after the statute; the codicil, by making the will a new will, was held to bring the devise within the statute, and so much of the will as related to testator's personal estate was consequently held to be void: Attorney General *v.* Heartwell, Amb. 451; Williams on Exec. 255, note *n* (6 Amer. Ed. 1877)..

It will be observed that property, which constituted a part of the residuary estate given by the will to the charity, was by the codicil in this case, given to the relatives of the testatrix. In Paulson's Estate, 11 Phila., 151, it was held, that a codicil, which was executed less than thirty days before the testator's death, and which diminished a legacy to a charity provided for in the will, was void under the Act of 1855.

*V. K. Keesey*, for the appellees.—We do not question the rule, that for many purposes a codicil would make the will speak from the date of its last codicil. The will Act of 1833, and the Act of 4th June, 1879, P. L. 88, requires a will to be construed *with reference to the real and personal property in it*, and to speak, and to take effect as if it has been executed immediately before the death of testator, unless a contrary intention shall appear by the will. These statutes do not enact absolutely that the will shall speak as if it had been made just before the death of testator, but only that it shall do so in respect of property comprised in it. Therefore, with respect to the description of persons described in the will, the law remains as before the passing of the Act: Williams on Exr., 263. Notwithstanding these Acts of Assembly, a will is executed on the day it is actually signed. The bequests in it are then made. The date of its execution is the time when it is made or in the language of the Act, "done," and if that be one calendar month before death of testator, the provisions of the will are not avoided by the Act of Assembly of 1855, although given to a religious or charitable institution. The rule which says that a will speaks from the date of its codicil is an artificial one: a legal fiction adopted originally to carry out a supposed intention of testator. But like every other general or artificial rule, applied in the construction of wills, it gives way before an ascertained adverse intent. Where such actual intent appears, the will and codicil will be treated as distinct *instruments* in order to give it effect, though in legal effect they are regarded as one *testament*: Alsop's Appeal, 9 Barr 381; Fuller *v.* Hooper, 2 Ves. Senr., 242; Bonner *v.* Bonner,

13 Ves. 379, and many other cases cited by Judge BELL in Alsop's Appeal, in which he says: "This distinction showing that though for some purposes a will and codicil are regarded as making but one testament, they will not be considered as a single instrument where a manifest intention requires otherwise, is observable in most, if not all, the cases. Of this Bonner *v.* Bonner 13 Ves. 379, may be regarded as a signal instance." We have an artificial rule or legal fiction that there are no fractions of a day: Small's Appeal, 24 Pa., Rep. 398. But that legal fiction yields between a purchaser and a judgment creditor, or whenever justice or equity requires it: Mechanics' Bank *v.* Gorman, 8 W. & S. 304; Ladley *v.* Creighton, 70 Pa. St. 490. The cases of Hamilton's Estate 24 P. F. S. 69, and Bradish *v.* McClellan, 13 W. N. C. 3; 4 Out. 607, sustain this view, although the rule is not in words mentioned. Hamilton's Estate sustained the charitable bequests although there was a codicil executed within thirty days of the death of testator. Bradish *v.* McClellan does not question the decision in Hamilton's Estate, only a portion of the reasoning by which that result was reached, which latter case gave effect to the devise in the codicil. If these two cases are correctly decided, they resolve the question in this case in favor of the appellee.

It must be remembered in this case that nothing was awarded to the appellee under the codicil, but only under the will, and that the codicil did not increase, but diminished the legacy to the charity provided for in the will. The Act of 1855 does not in letter or in spirit prohibit a testator from revoking either wholly or in part a previous bequest to a charity. Poulson's Estate, cited contra by the counsel for the appellants, was not a case where the codicil annulled or diminished a previous legacy to a charity, but was the case of a *substituted* bequest. It is not therefore in point in the present controversy.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

We agree entirely with the learned judge of the court below in his view of this case. In point of fact the testatrix executed her will more than three years before her death. It was that will which gave the charity to the appellee. The codicil diminished the amount of the charity, but that which passes to the legatee does so by force of the will only. While it is true that for certain purposes, and in legal contemplation, a will speaks from the death of the testator, that consideration does not in the least degree affect the physical fact of execution. The prohibition contained in the Act of April 26, 1855,

10 OUTERBRIDGE.—41.

relates to the physical fact alone. It would produce a manifest anomaly to hold otherwise. These are its words: "No estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will attested by two credible, and at the time disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, next of kin, or heirs, according to law:" Bright. Purd., 1477, pl. 22. It will be seen at once that the act of signing and attesting is the fact which must transpire more than one month before the other fact, to wit, the death of the testator, occurs. Between these two *facts* an interval of time, one month, must elapse. Moreover, the prohibition is applicable both to deeds and wills. They are in the same category, and are mentioned in the same sentence. But it would be an astonishing proposition to advance if the instrument creating the charity were a deed executed more than three years prior to the grantor's death, that it was void by force of this statute. The fault of the opposing argument lies in confounding a legal fiction with a physical fact. Of course, all wills must speak as of the time of the testator's death. It is a pure legal fiction that they were *executed* at that time. The fact of actual execution remains, and is entirely unaffected by the fiction. Wherever the *factum* is material, of its own force, in determining legal results, it will be treated as of the date of its actual occurrence. This would be eminently so in a question of sanity of the testator. If he were of perfect mental soundness at the time of execution, the validity of his testament would not be destroyed by a condition of insanity at the time of his death, which might not occur until years after. We do not think it necessary to enlarge upon the subject. The authorities cited by the appellants are not in point. They do not reach the question involved in this case. If the theory of the appellants were true, no charity could be given by will written and executed in the ordinary manner, as such a bequest would necessarily be avoided by the fiction that wills are efficacious only as of the time of the testator's death.

There is no merit in the other point, made but not pressed in argument, that the appellee is a foreign corporation.

Decree affirmed.