# Bingaman's Estate.

*Statutes—Judicial construction—Words used in cognate statute —Stare decisis—Statutory interpretation—Presumption.*

1. Where words and phrases in an act of assembly have received judicial construction, and they are later used in a cognate statute, the presumption is that the legislature intended them to be similarly interpreted.

2. Stare decisis requires an adherence to a statutory interpretation which has become a rule of property, especially if the legislature has frequently met since the interpretation was made and has not chosen to alter the language of the statute.

*Wills—Gift to charitable use—Thirty days' restriction—Effect of codicil executed within thirty days—Acts of April 26, 1855, P. L. 328; June 7, 1911, P. L. 702; June 7, 1917, P. L. 403.*

3. A gift to a religious or charitable use, created by a will executed more than thirty days before the death of a testator, will not be defeated by a later testamentary instrument, in legal effect a codicil, which simply diminishes the amount of the gift, or postpones the time fixed for its enjoyment, although the later instrument is executed within thirty days of the death.

4. In such case the gift is really made by the will for the amount and under the circumstances set forth in the codicil, and hence is not affected by section 11 of the Act of April 26, 1855, P. L. 328, the Act of June 7, 1911, P. L. 702, or section 6 of the Wills Act of June 7, 1917, P. L. 403, 406.

*Wills—Codicil—Calling codicil a will—Date of codicil.*

5. The fact that a decedent calls his testamentary instrument a will, is not conclusive. If it is an addition to or qualification of a last will and testament, it speaks as a codicil, whatever name the testator may have given to it.

6. Where a testamentary instrument is in some respects a codicil it is a codicil throughout.

7. Whether or not an instrument, in effect a codicil, reduces the amount given by a prior will to a particular donee, is to be determined as of the date of the making of the codicil.

*Wills — Construction — Surplusage —Giving effect to entire instrument—Dispositive and explanatory clauses.*

8. The courts are not at liberty to treat any part of a will as surplusage unless no other construction is reasonably possible; hence the dispositive clauses in a will must be construed in connection with the explanatory ones appearing in the same document. Only in this way can effect be given to the entire instrument.

*Wills—Remainders—Vested remainder—Rule against perpetuities—Particular estate—Codicil.*

9. A vested gift in remainder is not within the rule against perpetuities, even though the particular estate is determinable by a contingency which may fall beyond a life or lives in being.

10. Where, in a will, the particular estate offends the rule against perpetuities, but the remainder estate does not, the former may be amended, by a testamentary instrument which, in legal effect, is a codicil, without in any way affecting the valid remainder in the will, even though the latter is the instrument under which distribution is to be made.

Argued October 15, 1924. Appeals, Nos. 43 and 46, Oct. T., 1924, by John R. Bingaman and Charles A. Bingaman, from decree of O. C. Allegheny Co., April T., 1923, No. 142, dismissing exceptions to adjudication in estate of Charles F. Bingaman, deceased. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of MILLER, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinions of MILLER, P. J., and TRIMBLE, J.

John R. Bingaman and Charles A. Bingaman, heirs, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Maynard Teall* and *David A. Reed,* of *Reed, Smith, Shaw & McClay,* for appellant, John R. Bingaman.— The second will is not a codicil to the first, but is an entirely new will and wholly supersedes the first except as to certain relatively unimportant provisions thereof which are expressly saved: Price v. Maxwell, 28 Pa. 23; Burden's Est., 11 Phila. 130; Rudy v. Ulrich, 69 Pa. 177; Teacle's Est., 153 Pa. 219; Hamilton's Est., 74 Pa. 69.

The gift of the hospital's share of residue over to Charles A. Bingaman is void because subject to a trust for charity: McAuley's Est., 184 Pa. 124; Stirk's Est., 232 Pa. 98; Bickley's Est., 270 Pa. 101.

The gift of residue to the hospital under the first will is void as offending the rule against perpetuities.

*G. W. Williams,* for appellant, Charles A. Bingaman, cited: McIntosh's Est., 158 Pa. 528; Wood v. Wood, 63 Conn. 324; Price v. Maxwell, 28 Pa. 23; Mitchell's Est., 79 Pa. Superior Ct. 208; McNulty's Est., 29 Pa. Dist. R. 709; Flood v. Ryan, 220 Pa. 450; Irwin v. Irwin, 34 Pa. 525; Hollis v. Hollis, 254 Pa. 90.

*William Watson Smith*, with him *J. E. MacCloskey, Jr., F. H. Atwood, Frank B. Ingersoll* and *Gordon, Smith, Buchanan & Scott*, for appellee.—If a bequest is made to a charity by will executed more than a month before testator's death and if, by testamentary writing executed within a month before death, the testator modifies his will by making to the same charity a smaller gift in substitution for the original gift, the charity takes the gift under the original will as thus modified and the Mortmain Act does not apply: Sloan's App., 168 Pa. 422; Morrow's Est., 204 Pa. 484; Carl's App., 106 Pa. 635; Salt's Est., 8 Pa. Dist. R. 325.

No question as to the rule against perpetuities arises in the case at bar: Marshall's Est., 262 Pa. 145; Mc-Cauley's Est., 257 Pa. 377; Hood v. Maires, 255 Pa. 128; Bair's Est., 255 Pa. 169; Lilley's Est., 272 Pa. 143; Hunter's Est., 279 Pa. 349; Schrack's Est., 26 Pa. Dist. R. 708.

OPINION BY MR. JUSTICE SIMPSON, November 24, 1924:

When testator died, his heirs and next of kin were his brother, John R. Bingaman, and his nephews, Charles A. Bingaman and Walter S. Bingaman, children of his deceased brother, Joseph P. Bingaman. John and Charles separately appealed from the decree of the court below, and allege error in so much thereof as awards to the trustees under testator's will, one-half of the residuary estate in remainder, in trust, after the expiration of a life estate for John, to pay the principal of that share to the "Trustees of the Homeopathic Medical and Surgical Hospital and Dispensary of Pittsburgh, Pennsylvania [hereinafter called the hospital] the same to be placed in the endowment fund of said hospital for the use of the maternity wards." Appellants severally claim that this was erroneous, because the will had been executed less than thirty days prior to testator's death, and hence, under section 6 of the Wills Act of June 7, 1917, P. L. 403, 406, the attempted gift was "void and

[the fund should] go to the residuary legatee or devisee, heirs or next of kin, according to law."

Beyond this point, appellants "agree to disagree." Charles claims that he is entitled to the fund, because of the substitutionary gift, hereinafter quoted, by which, as he alleges, the hospital's interest was to be given to him in case of the death of testator within the thirty days. John claims that the substitutionary gift was upon an oral trust for the hospital, Charles being only a dry trustee for it; hence this attempt also failed and that portion of the residuary estate should have been awarded, one-half to him and the other half to be divided between Charles and his brother, Walter.

The court below specifically found the existence of such an oral trust for the hospital, and there appears to be ample evidence to justify the finding, despite Charles' allegations to the contrary. He admits there was a trust of some kind, but denies that the hospital was to be the sole beneficiary of it. It is not necessary to pursue the subject, however, for we are of the opinion that he misconceives the meaning of the 26th paragraph of the will, upon which he relies. It is as follows: "In the event of my decease prior to the expiration of the time prescribed by law which must elapse after the making of a will before charitable gifts thereunder become valid and enforceable, then I give, bequeath and devise to my said nephew Charles A Bingaman, such portion of the estate and interest, in my residuary estate, as has been hereinbefore given, bequeathed and devised to the [hospital]." Charles interprets this provision to mean that the gift over should be operative, if testator died within "thirty days" after executing the will. It is not so said, however, and we think testator did not so intend. What he evidently had in mind was a gift over, to take effect only in case that to the hospital should fail, and hence, as we are of opinion, for the reasons hereinafter stated, that it did not fail, the conditional gift to Charles never did and never could become effective, and

the argument founded on the mistaken interpretation of the paragraph necessarily comes to nothing. This brings us at once to the main question in the case, upon which the two appellants agree.

By section 11 of the Act of April 26, 1855, P. L. 328, 332, it is provided that gifts "in trust for religious or charitable uses [shall be void] except the same be done by deed or will......at least one calendar month before the decease of the testator or alienor." In Carl's App., 106 Pa. 635, we held that this did not apply where the charitable gift, appearing in a will executed more than one calendar month before testator's death, was followed by a codicil, diminishing the gift, executed within the month; that the making of the codicil did not effect a republication of the will so as to make it speak, in this respect, as of the date of the codicil; and that the statute was intended to apply to the time of actual execution of the will itself, the gift, under the circumstances stated, being really made by the will, for the amount as reduced by the codicil.

In Sloan's App., 168 Pa. 422, the will, which was executed more than one calendar month before testator's death, made a gift to a charity, payable at death, but was succeeded by a codicil, within the month, which expressly annulled and revoked the bequest in the will, and postponed the payment until after the expiration of two life estates. We sustained the gift, stating that the question to be decided was one of intention, and continued as follows, (page 430) : "What the testator did, and all that he intended to do, was to change the time for the payment of the bequest so as to give the interest to the persons named in the codicil while they lived. This is not a revocation. The fact that the testator called it by that name does not make it so. Revoke means to recall, to take back, to repeal. Annul means to abrogate, to make void. The codicil did not recall or make void the bequest in any particular except as to the time of payment, and this it changed. It left the donee,

the gift, and the purpose to which it was to be applied unchanged. If the codicil did not revoke the bequest then the Act of 1855 has no application, and the bequest stands as originally made, changed only as to the time for payment. But, again, the testator says that the codicil is to be 'instead of' the bequest in the body of the will. This expression excludes the idea of revocation in its technical sense, and is equivalent to a declaration that in such particulars as the codicil differs from the bequest it is to take the place of, or to be instead of, the bequest."

The same conclusion was reached in Morrow's Estate (No. 2), 204 Pa. 484, where, by a codicil executed within one calendar month of the death, the amount of the residuary estate, which each of the charities was entitled to receive, was reduced from one-sixth to one-seventh.

With the law in this shape the amendatory Act of June 7, 1911, P. L. 702, was passed, and later still section 6 of the Wills Act of June 7, 1917, P. L. 403, 406. So far as affects the question under consideration, these statutes reënacted that of 1855 in exactly the same language, except that the Act of 1917 changed the period to "thirty days," instead of "one calendar month," as previously specified. It must be presumed, therefore, that the legislature intended the construction given by this court, in the cases cited, to apply to these statutes also (Hedrick v. Harrisburg, 278 Pa. 274) ; and as, during the forty years which have elapsed since the first of these decisions was made, twenty general assemblies have met and enacted such laws as they deemed the public good required, but did not choose to alter the language which we then and ever since have construed in the one way, stare decisis requires us to adhere to the interpretation thus put upon that language (Bickley's Est., 270 Pa. 101), especially as our construction has become a rule of property under which, doubtless, large sums of money have been distributed, and will continue to be distributed, unless by legislation a different rule obtains. We sympathize with appellants in their regret as to the

existence of the rule, but must consider it as settled beyond judicial controversy, and hence need only state it for working purposes, as follows: A gift to a religious or charitable use, created by a will, executed more than thirty days before the death of a testator, will not be defeated by a later testamentary document, in legal effect a codicil, which simply diminishes the amount of the gift, or postpones the time fixed for its enjoyment, although the latter instrument is executed within thirty days of the death. We agree with appellee that the application of this rule is decisive of the present controversy.

By a will executed in 1919, more than three years before his death, testator disposes of his residuary estate as follows:

"Anything remaining after paying and providing for the above bequests, is to be placed with the Fidelity Title and Trust Company of Pittsburgh, [and Charles A. Bingaman] in trust for the following persons: Joseph P., John R., and Charles A. Bingaman; one-third of the income from said trust to be paid to each during his life time. At the death of any one of these persons, their share of said income with the exception of Chas. A. Bingaman, shall be paid to the [hospital], and the same used in the Maternity Wards; in the case of Chas. A. Bingaman, should he die leaving one or more children then said child or children will, as legatee, be entitled to the income during their lifetime. Upon the death of all legatees the body of the trust with any increase, shall be turned over to the [hospital], the same to be placed in the Endowment Fund for the use of the Maternity Wards."

Subsequently testator made a codicil to this will, which reduced the residuary estate, but has no bearing on the questions to be decided here. Still later, because of the death of his brother Joseph, who had been given an interest in the residuary estate and in other provisions of that will, because of his intention to at once

adeem a legacy of $130,000 given to the hospital, and probably for other reasons also, testator concluded to alter his will somewhat, in order to meet the new conditions. To have made a formal codicil to cover all the changes necessary, would have tended to complicate matters greatly, and perhaps to have rendered uncertain what were his testamentary intentions. He therefore determined to carry out his purpose by a paper which, though in form a new will, was, so far at least as concerns the charitable bequests, only a codicil to the old one. It was executed in 1922, within thirty days of his death, and out of it the present dispute arises. Speaking generally, the earlier paragraphs are but repetitions of similar provisions in the will of 1919, a few being altered to meet the changed conditions above referred to. The residuary clause is as follows:

"25th., (a): I hereby revoke and annul all former wills and testaments by me at any time heretofore made, excepting only so much of the same as relate to the charitable gifts, bequests and devises, which are set forth and made in a former will made by me, which said former will is dated January 14, 1919, and which has a codicil thereto, dated June 30, 1922. As to said charitable gifts, bequests and devises in said former will made, I do hereby expressly revoke and annul the one in which $130,000.00 was directed to be given to the [hospital], for the reason that I make, contemporaneously herewith, a deed of conveyance to said Hospital of certain real property owned by me, fronting on Wood Street in the City of Pittsburgh, Pa., and the net value of said Wood Street property is, in my judgment, fully worth the amount of said former gift in said previous will.

"(b). I also hereby expressly revoke and annul the gift, bequest and devise made in the former will to the trustees of said Hospital of such portion, estate and interest in my residuary estate as is given to it, or for its benefit, in said former will for the reason that in this present will I have made said Hospital a certain gift,

bequest and devise, of such portion, estate and interest in my residuary estate as I think to be proper and right, under all the circumstances, and which is to take the place of said former gift, bequest and devise.

"(c). All other charitable gifts, bequests and devises which are made in said former will are not revoked or annulled by this will, unless the charitable gifts, bequests and devises herein made should become effectual and enforceable by reason of my surviving the date of the execution of this present will a sufficient length of time to validate and make enforceable the said gifts, bequests and devises therein contained. And in the event of my so surviving, and said gifts, bequests and devises in this will set forth being valid and enforceable, then I do hereby revoke and annul all the said other charitable gifts, bequests and devises which are made and contained in said former will, dated January 14, 1919, and which has a codicil thereto, dated June 30, 1922."

Appellants contend that the cases cited, and the rule derived from them, have no application here, because the will of 1922 is not a codicil but a formal will, and because also it does not clearly appear that thereby the hospital gets a smaller sum than it would have received under the original will.

As to the first of these contentions, it is unquestionably true that the testament of 1922 is in form a will and not a codicil. In the body of the instrument itself, it is called a will on nine different occasions. This, however, is not conclusive of the question as to whether or not it is, in legal effect, a codicil: Cousinery's Est., 13 Pa. Dist. Rep. 224, per PENROSE, J. The law is not concerned with form but with substance, especially in testamentary dispositions. Because of this, we stated in Kimmel's Est., 278 Pa. 435, 438, quoting from previous cases, that deeds, mortgages, powers of attorney, agreements, checks, notes, assignments, letters of instructions, informal letters of request, and other papers making posthumous gifts, are wills, no matter what their form

may be. For like reasons, this, or any other testamentary instrument, though called by its maker a will, may, in legal effect, be a codicil. If it is "some addition to, or qualification of, a last will and testament" (1 Bouvier's Law Dictionary, 3d ed. 516), it speaks as a codicil, whatever name the testator may have given to it.

Thus tried, the present will is, in effect, a codicil, and in some respects cannot possibly be anything else. In terms it refers to the will of 1919, as expressing a part of decedent's testamentary intent when he executed this will of 1922, and, without the former will, in some respects it cannot be known what testator intended when he executed the later one. This is especially so as to the nine "charitable gifts, bequests and devises" referred to in paragraph 25 (c). It is not possible to ascertain what "charitable gifts, bequests and devises" in the will of 1919 are directed to remain good for their full amount, and are to pass under that will, should testator fail to survive "a sufficient length of time to validate and make enforceable" the same gifts in the will of 1922 (as in fact he did not), without referring to the will of 1919, to know who the legatees are and what they are severally to receive; hence the two wills were rightfully probated together, and must be construed together in this particular. Being, in the respect stated, a codicil, it must be a codicil throughout, and hence, technically speaking, this contention of appellant fails. While the conclusion thus reached defeats the argument founded on the name, it does not determine the rights of the parties. We must still ascertain, from the body of the instrument, what testator intended by the language used.

In considering this, the first thing which attracts attention is the unusual method he adopted in order to express his desire. The will of 1919 has a general revoking clause in its initial paragraph. No such provision appears in the will of 1922, and indeed there could not have been one put there, without fear of defeating some of testator's purposes. In twenty-four separate para-

graphs he sets forth his testamentary intention, including his gift of the residue, and then in paragraph 25, (a) and (b), he states the extent of the revocation he desires. We cannot sustain appellants' argument on the present point without in effect deciding that those subparagraphs were wholly unnecessary. We are not at liberty, however, to treat any part of a will as surplusage, unless no other construction is reasonably possible (Baughman's Est., 281 Pa. 23); hence the dispositive clauses must be construed in connection with the explanatory ones, for thus only can effect be given to the entire instrument: Patton's Est., 268 Pa. 367.

What testator does, after disposing of his estate by the twenty-four paragraphs, is to "revoke and annul all former wills and testaments by me at any time heretofore made, excepting only so much of the same as relate to the charitable gifts, bequests and devises which are set forth" in the will of 1919. If the will of 1922 had stopped at this point, probably no one would contend against the decree below, for the gift of the residuary estate is covered by the exception stated. A satisfactory argument cannot be based on the contention that testator meant, by the exception, to cover only the nine charitable gifts, later referred to in paragraph 25 (c), for the language embraces all his charitable gifts, and he proceeds then to consider them all, separately and distinctly. In doing this he first expressly revokes the legacy of $130,000 given by the will of 1919, because, as he says, "I make, contemporaneously herewith, a deed of conveyance to said hospital of certain real property," shown to be of greater value than the legacy.

In paragraph 25 (b), with which we are directly concerned, he revokes the gift to the hospital of the entire residue, as appearing in the will of 1919, because the gift of one-half thereof, in his judgment, is "proper and right under the circumstances, and is *to take the place of* said former gift, devise and bequest." Sloan's Appeal, supra, expressly decides that a testator's declaration

that he revokes a bequest specified in his prior will, does not establish the fact that it is technically revoked, and that his statement that he gives the legacy specified in the codicil "instead of" that mentioned in the will, is sufficient to fix the connection between the two, and to establish the will as the dispositive instrument for the amount mentioned in the codicil, because "instead of" means "to take the place of." Here testator expressly says the one-half of the residue, specified in the will of 1922, is "to take the place of" the entire residue given by the will of 1919, and hence that case decides the point under consideration. Without further elaboration, it is sufficient to say that, taking these residuary clauses in their entirety, in conjunction with paragraph 26, we are convinced that testator intended, if he died before the will of 1922 became fully effective, as in fact he did, that the smaller charities should receive the full amount given to them by the will of 1919, and the hospital should receive one-half of the residuary estate given by the same will, as modified by the will of 1922; and that all of those gifts, as appearing in the latter will, are but substitutionary for those appearing in the former.

This brings us to the second of the supposed distinctions between this will and those construed in the cases above cited. Upon this point but little need be said. It is not our purpose to enter into a consideration of the question as to whether or not the entire residuary estate in remainder, at the time of the execution of the will of 1919, was greater or less than one-half of the residuary estate in remainder at the time of the execution of the will of 1922. That is not the question before us. Whatever accrues to a testator's estate, after the execution of his will, passes under its provisions, unless he expressly provides otherwise. So, also, the fact that a distributee is benefited by a change in the situation, occurring after the making of a will (as for instance, by the death of testator's brother Joseph) is an immaterial matter, so far as concerns the Act of

1917, which applies only to the date of execution: Carl's App., supra. As a consequence, the question as to whether or not there was a reduction in the gift by the will of 1922, must be determined as of the date of its execution, and it must be very clear that where, as here, the other gifts are substantially the same in both wills, one-half of the residuary estate at that time was less than the whole of the residuary estate at the same time. To determine the exact monetary difference between the two gifts, would require us to calculate the effect of the slight changes made by the other paragraphs of the later will, some of which tended to enhance the residuary estate, and others to reduce it; but this is unnecessary, since they are relatively so small in amount as to make clear that the variance would not equal half of the residuary estate.

One other question is raised. It is contended that, under the will of 1919, the residuary estate was given in violation of the rule against perpetuities, in that it might extend beyond a life or lives in being and twenty-one years thereafter; that the gift in remainder to the hospital fell with the void particular estate, and, hence, if the will of 1919 furnishes the standard for distribution, the gift fails entirely. This, however, is an erroneous conclusion from whatever standpoint it is viewed, but we shall state two reasons only. If we were considering the will of 1919 alone, the gift to the hospital would be good, no matter what happened to the life estates, for that gift was vested, and was bound to go to the hospital at some future time. Being vested, the rule against perpetuities does not apply to it (Lilly's Est., 272 Pa. 143; Hunter's Est., 279 Pa. 349) even though "the particular estate is determinable by a contingency which may fall beyond a life or lives in being": Gray on Perpetuities (3d ed.) par. 209. Moreover, the will of 1922 wipes out, so far as concerns the one-half of the residuary estate given to the hospital, all the provisions which are alleged to offend against the rule re-

garding perpetuities, and since we are to construe the two wills together, and not as unrelated instruments, this contention fails for that reason also.  To decide otherwise would be to hold that a testator cannot so alter his will as to legalize prior invalid life estates, and yet leave intact a valid estate in remainder.  This is unthinkable when the expressed intention of the testator is the one thing sought for.

The decree of the court below is affirmed, and each of the appeals is dismissed at the cost of the appellant therein.