## Kuntz Estate

Schmidt & Allison, for trustee.

Meyer Goldfarb, for Washington Hospital, claimant.

Lloyd O. Hart, for Y. M. C. A., claimant.

Thomas L. Anderson, for Washington City School District, claimant.

ANDERSON, P. J., December 5, 1950.—James Kuntz, Jr., a resident of Washington, Pa., died, testate, July 6, 1917, and by his last will and testament dated December 24, 1912, he, inter alia, created two trusts. The first trust was created by the second paragraph of his will which, briefly, provided that an award of $50,000 be made to his trustees, the income of which was to be paid to his son, F. B. Kuntz, as a spendthrift trust for and during the term of his natural life, and upon his decease, the corpus was to be distributed as follows: To the Young Men's Christian Association of Washington, Pa., $20,000; to Washington and Jefferson College, $20,000; to the School District of the Borough of Washington in Washington County, Pa., $5,000, to be used for the purposes of the high school maintained by district; to the Washington Hospital, Washington, Pa., $5,000.

By a codicil to such will dated September 19, 1913, he reduced the principal amount of such trust from $50,000 to $30,000 and directed that upon the death of his son that the $30,000 go to the same beneficiaries, and in the same amounts, except Washington and Jefferson College, and, in lieu thereof, provided that his executor should, within two years from his death, pay from other funds of his estate and to the college the sum of $10,000.

By a third codicil to his will dated June 27, 1917, he made this provision:

"Having by codicil dated September 19, 1913, reduced the amount to be held by my executor under the trust created by the second paragraph of my said will from $50,000.00 to $30,000.00, and being now desirous of putting in said trust fund the sum of $50,000.00, I hereby give and bequeath to my executor the sum of $50,000.00 in trust for the uses and purposes, and upon the terms and conditions specified in the said paragraph of my will, and direct that after the death of my son F. B. Kuntz the principal of said trust fund shall be distributed as follows: To the Young Men's Christian Association Association of Washington, Pennsylvania, Thirty thousand ($30,000.00) dollars; to Washington & Jefferson College, Ten thousand ($10,-000.00) dollars; to the School District of the Borough of Washington, in Washington County, Pennsylvania, Five thousand ($5,000.00) dollars to be used for the purposes of the Domestic Science Department maintained by the said District; to the Washington Hospital of Washington, Pennsylvania, Five thousand ($5,000.-00) dollars."

It will be noted that this codicil was executed within a calendar month of the death of the testator.

By the Act of April 26, 1855, P. L. 328, sec. 11, amended by the Act of June 7, 1911, P. L. 702, sec. 1, 10 PS §12, and which acts were in force at the date of the death of decedent, it is provided:

"That no estate, real or personal shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust, for religious or charitable uses, except the same be done by deed or will attested by two credible, and, at the time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor . . . and all dispositions of property contrary hereto shall be void, and go [to] the

residuary legatee or devisee next of kin, or heirs, according to law."

By the provisions of section 2 of the Act of June 4, 1879, P. L. 88, which act also was in force at the time of the death of testator, there was a provision that lapsed or void legacies contained in a will would go into the residue.

This trust now comes before the court for distribution following the death of the life tenant. Claim is made in behalf of the Young Men's Christian Association of Washington, Pa., to a payment of the sum of $30,000 from this fund of $50,000; by the School District of the City of Washington (formerly the Borough of Washington) for the sum of $5,000, and by the Washington Hospital, for the sum of $5,000. No claim was presented in behalf of Washington and Jefferson College.

We are assuming in the further discussion of the question involved here that all of the beneficiaries named in the third codicil to decedent's will are properly classified as institutions engaged in religious or charitable work.

The court has been furnished with numerous citations, the effect of such citations being that where the codicil to a will which is executed within the prohibited calendar month period, does not affect by way of repeal or revocation, bequests made in the will or earlier codicils which were executed more than a calendar month prior to decedent's death, the earlier provisions making a gift for religious or charitable uses should be upheld.

In the Appeal of Carl et al., 106 Pa. 635, 642, the court says:

"Of course, all wills must speak as of the time of the testator's death. It is a pure legal fiction that they were *executed* at that time. The fact of actual execution remains, and is entirely unaffected by the fiction.

Wherever the *factum* is material, of its own force, in determining legal results, it will be treated as of the date of its actual occurrence. This would be eminently so in a question of sanity of the testator. If he were of perfect mental soundness at the time of execution, the validity of his testament would not be destroyed by a condition of insanity at the time of his death, which might not occur until years after. . . . If the theory of the appellants were true, no charity could be given by will written and executed in the ordinary manner, as such a bequest would necessarily be avoided by the fiction that wills are efficacious only as of the time of the testator's death."

In Wright's Estate, 284 Pa. 334, we find this statement:

"Where a will creating a charitable trust was executed . . . more than thirty days prior to testator's death, the execution of codicils within the thirty days will not affect the validity of the charitable trust, where the codicils make no attempt to change the will as to the charitable trust." (Syllabus.)

In Bingaman's Estate, 281 Pa. 497, testator, by will dated more than 30 days prior to his death, gave one half of his residuary estate in trust for charitable purposes. By later testamentary paper the amount was diminished. In answer to an argument that the trust falls because of this later writing, the court held, page 504:

"A gift to a religious or charitable use, created by a will, executed more than thirty days before the death of a testator, will not be defeated by a later testamentary document, in legal effect a codicil, which simply diminishes the amount of the gift, or postpones the time fixed for its enjoyment, although the latter instrument is executed within thirty days of the death."

In Hickman's Estate, 308 Pa. 230, testator gave his residue to charity by will more than 30 days prior to

his death. Such will also contained a bequest to one Lizzie Parker, who died before testator. After her death he erased her name and substituted another name. This change was made within the 30-day period. It was argued that, since such change changed the amount of the residue as it was after the death of Parker, the gift to charity failed. The court held, page 237:

"When the Lizzie Parker legacy was annulled it was by death and not by any act of the testator; when he later substituted the name of his then housekeeper for that of Lizzie Parker he took from rather than added to the residuary estate which was to go to charity, and the validity of the charitable bequest could not in any way be disturbed by this circumstance. It was complete in law, both before and after the alteration, and did not need further validation under the statute relating to charitable bequests."

In Lightner's Appeal, 57 Pa. Superior Ct. 469, testatrix more than a calendar month before her death made bequests to individuals and named a charitable institution as residuary legatee, but by a codicil executed within the calendar month prior to her death, she reduced the bequest to the individuals and thereby increased the residue to the charity. In this case the court held, page 472:

"This being done within one calendar month before her decease, the increased amount must be treated as being devised by her at the time she created the fund to meet that increase, and as such was an intended 'disposition of property' which is prohibited by the very words of the Act of 1855. To hold otherwise, would open a door to avoid the salutary provisions of that act, and nullify the very purpose of its enactment."

The gift to the Washington Hospital under these decisions is not affected by its confirmation in the codicil.

The gift to the School District of the Borough of Washington is not changed in any way in the codicil except that the purpose for which the money was given to the School District of the Borough of Washington is more limited than it was in the original will. The will provided that the fund should go for high school purposes and the codicil provided it should be used for the work of the domestic science department maintained by the district. This is then, as suggested by counsel, similar to a diminution of the amount, and, as we view it, the validity of the gift is not affected by reference to it in the third codicil, although its use be limited thereby.

The gift of $30,000 to the Young Men's Christian Association, of course, presents an entirely different problem. Under the decision in Lightner's Estate, just recited, and on authority of the other decisions we find that the Young Men's Christian Association is not entitled to the sum of $30,000 but its right to the sum of $20,000 originally given to it has not been repealed or revoked by the codicil. This disposes of $30,000 of the $50,000.

The gift to the college of $10,000 in the third codicil we hold to be void. Originally the will gave to the college the sum of $20,000. By the provisions of the first codicil the college was removed entirely as a beneficiary under the trust estate and, in lieu thereof, was given $10,000 directly from the other funds of the estate. There was, therefore, no effective provision giving anything to the college from the funds of this trust prior to the execution of the third codicil, and it having been executed within the prohibited period of one calendar month, the bequest to the college, assuming that the college is a religious or charitable institution, must fall.

Under the provisions of the acts of assembly recited, the sum of $20,000 as to which the codicil is ineffective,

becomes a part of the residuary estate of decedent, which forms the trust fund which we will now discuss.

The second trust in this estate was originally set up in the thirteenth paragraph of decedent's will. It provided:

"I give, devise and bequeath the residue of my estate, real, personal and mixed, to John H. Donnan, in trust nevertheless, for the uses and purposes following, that is to say, upon trust that he shall invest and re-invest the same in good and safe securities, and collect and receive the interest, income and dividends thereof and *pay over the one half of the said interest, income and dividends* to my wife, Mary R. Kuntz, for and during her natural life, and from and after her death, pay over the said one half to my grandson James Kuntz Weber. The other half of the interest, income and dividends received upon the above trust fund shall be paid to my daughter, Mrs. Anna K. Weber, for and during her natural life so that the same shall be for her sole and separate use and not in her power or control nor liable to her debts, contracts or engagements, and from and after the death of my said daughter, the said income, payable to her for life, shall be paid to my grandson James Kuntz Weber. After the death of *both* my wife and daughter, I direct that all the property held by my trustee under the provisions of the above trust shall be turned over to my grandson James Kuntz Weber in the following manner, viz.: the one half thereof shall be turned over to my said grandson upon his arriving at the age of twenty-five years, and the remainder thereof upon his arriving at the age of thirty-five years." (Italics supplied.)

By the last codicil to his will dated June 27, 1917, testator made the following provision:

"Having in the Thirteenth paragraph of my said will directed that after the death of both my wife and daughter, the property held by my trustee under the

provisions of the said Thirteenth paragraph, shall be turned over to my grandson James Kuntz Weber as therein set forth, I now order and direct that *after the death of my said wife and daughter* the said property held by my trustee under the provisions of the said paragraph, shall be turned over to my grandson James Kuntz Weber in the following manner, viz.: the one-half thereof shall be turned over to him upon his arriving at the age of thirty (30) years and the remainder thereof upon his arriving at the age of forty (40) years. In the event of his death before arriving at the age of forth (forty) years, I direct that the said property then remaining in the hands of my trustee under the said paragraph of my will, shall be turned over to the lawful issue of my said grandson surviving at the time of his decease, and in the event of his dying before arriving at the age of forty years without leaving lawful issue surviving, I direct that the property remaining in the hands of my said trustee, shall be divided equally among the Young Men's Christian Association, of Washington, Pennsylvania, the Young Women's Christian Association of Washington, Pa., Washington & Jefferson College, Washington Hospital of Washington, Pennsylvania, the Second Presbyterian Church of Washington, Pennsylvania, and the First Christian Church of Washington, Pennsylvania." (Italics supplied.)

At the time of his death decedent was survived by his widow, his daughter Anna K. Weber, and his grandson James Kuntz Weber. The residue of his estate was awarded to his then trustee but following the death of such trustee eventually came into the hands of the present accountant, the Mellon National Bank and Trust Company as successor trustee. At the audit of the accounting of such bank (such accounting having been required by reason of the expiration of the trust period of the trust first discussed)

the accountant requested the court to determine as to this trust whether or not James Kuntz Weber, grandson of decedent, is now entitled to receive a distribution of any portion of the principal of such trust fund. The court is informed that the following is the status of the beneficiaries named in the original trust. The widow of decedent has been dead for many years, her death having occurred on March 24, 1926. Testator's daughter, Anna K. Weber, is still living and is in her late seventies. His grandson, James Kuntz Weber, is still living and is now 53 years of age, and although being an invalid, we are advised is sui juris.

There is very little difference between the original setup of the trust and the provisions of the codicil just recited. The main difference is that the ages at which the grandson is to receive the principal have been changed as to the one half from 25 to 30 years, and as to the other half from 35 to 40 years. In the original setup of the trust there is no provision for remainder over in the event of the death of testator's grandson before arriving at either of these ages. In the codicil the provision is made that if he dies before the age of 40 years, leaving lawful issue, the property then in the hands of the trustee was to be paid to his lawful issue. If he died before reaching the age of 40 years without leaving issue then the remainder over was to the various recited charities.

It will be noted that by the provisions of the will, Anna K. Weber is never to receive more than one half of the income from the trust and she is never to receive any principal. It is further to be noted that as to her, and as to her only, is there any spendthrift provision.

It will hardly be questioned that under the present facts the grandson, James Kuntz Weber, having arrived now at the age of 53 years, has met all conditions and has an absolute vested interest in the entire prin-

cipal of the estate and a present right to one half of the income from such estate. Regardless of whether he died prior to, or after, the death of his mother, Anna K. Weber, except by way of inheritance from him, she could have no interest whatever in the principal of the estate.

It will be noted in the original thirteenth paragraph testator said that after the death of "both my wife and daughter" distribution should be made of the principal, and in the codicil provides that after the death "of my wife and daughter", such distribution is to be made.

We know that James Kuntz Weber is married and has one son. Whether he now has any issue, as pointed out, is not material. The conditions under which his issue or the charitable beneficiaries could take (that is, at his death, before arriving at the age of 40 years) are now ended, because he is living and is over the age of 40 years so, regardless of when James Kuntz Weber dies, if this trust is not terminated at such time, subject to the rights of his mother as to one half of the income, the principal of the trust fund would be assets of his estate.

It would seem the intent and purpose of testator (primarily) was to preserve the entire principal fund for his grandson, or the issue of his grandson, or in event of death before 40 without issue for charities named, and his purpose (secondarily), was to see that the life beneficiaries during the period of their lives should be amply provided for. It is also to be noted that there are no spendthrift provisions made as to the grandson. Apparently, the only desire in the mind of testator was that his grandson reach such years of maturity as to be capable of handling so large an estate before he would come into possession of any of the corpus. We feel that what testator intended, although that is not well expressed in his will, was that

one half of the estate was to be set aside to provide income for his widow during her life and at her death the income from such one half be paid to his grandson, James Kuntz Weber, until he arrived at the age of 30 years, at which time he should be given that one half of the principal; and that the other half of the principal should be kept intact during the lifetime of his daughter, free from any possibility of anticipation by her, or attachment by her creditors, and then if her death occurred before the grandson had reached the age of 40 years, that such grandson would receive the income from this half of the principal until he, if he did, arrived at the age of 40 years, and then receive the balance of the corpus.

We are aided in arriving at this interpretation of testator's intent by the fact that in the codicil referred to he changes the wording originally used, that is, after death of *both* my wife and daughter, to wording, after death of wife and daughter. The removal of such word "both" indicating he meant payment of one half of corpus to follow successive deaths.

It is also of help in seeking to find testator's intent to consider that he was speaking at a time when his daughter was not 50 years of age and his grandson was not over 20 years of age. Under normal expectancy of life tables his daughter should be living when her son reached age of 30 years, and by the same standards his widow would not then be living. In fact she died within such period.

But whatever his intentions were it is now certain that James Kuntz Weber has an absolute vested interest in the entire principal of trust fund and in one half of income.

No other person in being or yet unborn has or can obtain any interest in principal fund no matter how remotely contingent. There is no restraint so far as grandson is concerned upon his right to anticipate or

alienation of income or principal, save rights vested in his mother. His interest is not beyond reach of creditors. No discretion is placed in the trustee, who has no duty beyond mere holding of principal and payment of income until time for payment of principal arrives. The only restraint on present enjoyment is to await the lapse of time. We do not think testator intended that his grandson after having reached mature age of 40 years would still have to wait until his mother's death to come into possession of one half of the corpus.

And we would have no hesitancy in directing an immediate award of one half of the corpus to him were it not for the provision which gives to his mother not the income from one half of the corpus but one half of the income from the entire corpus.

Our Supreme Court held in McCallum's Estate, 211 Pa. 205, 208:

"Even if she be entitled to but one-half of such income, it is clear that the trust must be continued as to the entire principal, the gift of half the income of a fund being regarded as more desirable than the income of half of the principal." See also Lockhart's Estate, 306 Pa. 394, 405.

However, that possible barrier to present award of one half of the principal to grandson has been overcome by the filing of record of a waiver by life tenant, Mrs. Weber, to such award and her joinder in prayer of her son that award be made.

Under decisions of the appellate court the trustee has no right to object and, in fact, in the instant case, it joins in request for an order allowing present distribution of one half of corpus.

We see no reason why the grandson should not now receive an award of one half of the principal of the estate. His mother, Anna K. Weber, would in no way be injured thereby unless she would benefit by inherit-

ance from her son in event he predeceased her, intestate, and without issue. But that gives her no real right to object to the present award.

It is therefore ordered and decreed as to the trust set up by the second paragraph of decedent's will, and the one first herein discussed, that a decree and order of distribution be filed awarding $20,000 of such fund to the Young Men's Christian Association of Washington, Pa.; $5,000 to the Washington Hospital of Washington, Pa., and $5,000 to the School District of the City of Washington; the balance of $20,000 to be awarded to the Mellon National Bank and Trust Company, to be held by them as additional trust funds under the trust agreement under the thirteenth paragraph of decedent's will.

And it is further ordered and decreed as to the trust created by the thirteenth paragraph of the will that the trustee prepare forthwith and submit to Mrs. Weber and James Kuntz Weber, a suggested equitable division of the principal assets of the trust, and that upon approval of such division by such persons, or their duly authorized agents or attorneys, that a supplemental accounting bringing present account to date be filed and a list of such assets set aside for each be reported to this court together with consent of James Kuntz Weber that particular assets set aside for him be awarded him in kind, and consent of Mrs. Weber that assets set aside for her be awarded back to the trustee for future accounting.

And it is further ordered and decreed that upon compliance by trustee with such directions a schedule of distribution be prepared and filed awarding to James Kuntz Weber, less proper costs, his share of accrued income and principal assets set aside to him and remainder reawarded to trustee for uncompleted provisions of the trust.