Ferguson Trust.

Argued April 16, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Francis T. Anderson,* with him *Frank W. Melvin,* for appellants.

*Claude C. Smith,* with him *A. David M. Speers* and *Duane, Morris & Heckscher,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 27, 1946:

These appeals involve a controversy between life tenants and remainderman over the allocation of stock dividends and proceeds of the sale of stock subscription rights received by the trustee of an inter vivos trust.

By deed of trust dated June 19, 1905, Nathaniel Ferguson, the settlor (who died August 27, 1930), transferred to The Real Estate Title Insurance and Trust Company of Philadelphia (now Land Title Bank & Trust Company) 500 shares of the capital stock of the Consumers Gas Company of Reading, Pennsylvania, in trust, to collect "all such dividends, accretions, profits or benefits of every kind whatsoever as may be declared, become due and be payable upon or on account of said shares" and to "expend such dividends in the purchase of suitable gifts and to distribute the same in each and every year" to himself, his three children (Margaret Rodman Ferguson, Grace Ferguson, and Richmond Jones Ferguson) and to his mother-in-law and father-in-law (Margaret E. McC. Jones and Richmond L. Jones), during their respective lives and the life of the survivor, on their several birthday anniversaries and on specified holidays. The 500 shares of stock so transferred had been received by settlor in kind on distribution under the intestate laws of his deceased wife's separate estate. His object, as recited in the preamble, was "to continue, during the lives of all of her family, her happy way and pleasing custom of distributing gifts among us out of her separate estate, upon the recurrence of the festivals, days and times hereinafter mentioned, that on those days she shall be ever present with us as she used to be." On the death of the last survivor it is provided that the 500 shares of Consumers Gas Company

stock, or whatever may have been substituted therefor, "together with all accretions, additions and accumulations thereto and thereon," shall be transferred to the Rector, Church Wardens and Vestrymen of Christ Church, Reading, Pennsylvania, as a perpetual trust to be known as "The Robin Jones Ferguson Fund," the income to be applied "in the purchase of suitable gifts, which are to be distributed, as by her hand, on Christmas Days and Easter Days to gladden the hearts of little orphans or friendless children of the City of Reading."

In Item 3 settlor provided as follows: "If there should be at any time, or from time to time, any accretion or accretions by way of extra dividends, increase of capital stock inuring to the benefit of stockholders, or otherwise, the same shall be added to and form part of the principal fund and held by the Trustee." Relying on this provision the trustee has added to and treated as principal five stock dividends received by it in the period from December, 1923, to September, 1932, totaling 525 shares, which the trustee retains, plus certain fractional shares sold for $55.47. The trustee has also added to and treated as principal the sum of $7763.71 received as proceeds from the sale of 1282 stock subscription rights issued to it in June, 1929, and May, 1931. At the inception of the trust and during the first four years, until 1909, the trustee received regular semi-annual dividends of $375, or $750.00 per year. After 1909 the trustee received quarterly dividends increasing in amount to $765.63 each in 1933, or $3062.52 per year. All such dividends have been distributed to the life beneficiaries and in addition they have received fifth cash dividends paid to the trustee in the years 1915, 1924, and 1925.

At the audit of the trustee's first account filed November 22, 1944, the surviving life beneficiaries (Margaret Ferguson Hansen, Grace Ferguson Adams, and Richmond Jones Ferguson) objected to the trustee's retention of the stock dividends and the proceeds of stock subscription rights as additions to principal, contending that there should be apportionment between life

tenants and remainderman.[1] The auditing judge rejected this contention on the ground that the deed of trust, in Item 3, expresses a contrary intention, and entered a decree confirming the account. Exceptions to the adjudication were dismissed and these appeals were then taken.

The question is whether Item 3 expresses an intent contrary to the rule of apportionment. The life tenants argue that it does not—that the words "any accretion or accretions" must be construed as comprehending merely "any increases of corpus," because (1) this is the ordinary meaning of the term "accretion" when used in connection with shares of stock; (2) unless such construction is adopted a repugnancy exists between Item 3 and Item 1 which under familiar rules of construction must be resolved in their favor; and (3) the parties have approved such construction in that increased cash dividends and cash dividends in addition to the regular quarterly dividends have been paid to the life beneficiaries, including settlor, without objection. We conclude, as did the Orphans' Court, that an intent against apportionment is expressed by settlor, which intention will be given effect except as some positive rule of law may prevent: *Opperman's Estate* (No. 1), 319 Pa. 455, 459, 179 A. 729.

The term "accretion", used in relation to shares of stock, has acquired no clearly defined meaning in our law as comprehending either income or principal, or both. Its meaning as so used is a question that may be resolved differently under varying circumstances and factual situations. See *Doty v. Commissioner of Internal Revenue*, 148 F. 2d 503, 507. In speaking of capital gain, a number of our cases have used the term as synonymous with the word "increase," as for example "accretion to the corpus" (*Graham's Estate*, 198 Pa. 216, 219, 47 A. 1108) "principal accretions" (*Chauncey's Estate*, 303 Pa. 441, 446, 154 A. 814) or "accretion of

---

[1] By stipulation of counsel it is established that of the 525 shares received by way of stock dividends, 473 were declared and paid out of earnings and that all of the stock subscription rights were so paid.

the principal" (*Nirdlinger's Estate,* 290 Pa. 457, 475, 139 A. 200). But the only case found where construction of the term itself as applied to stock was specifically in issue clearly indicates that it may, in a proper case, be construed to include income: *Revloc Supply Co. v. Troxell,* 281 Pa. 424, 126 A. 774.

What is the proper construction of the term as used by settlor in Item 3? Had he simply provided that "any accretion or accretions" should be added to principal, a more difficult question would be presented. But this is not what settlor did. He did not use the term "accretion" generally. He provided there should be added to principal any accretion or accretions "by way of extra dividends, increase of capital stock inuring to the benefit of stockholders, or otherwise." These words of modification were obviously inserted by the settlor for the purpose of defining the class of receipts by the trustee intended to be embraced by "accretion or accretions," limiting the class to the items enumerated and receipts of a similar nature. So defined, the term embraces the stock dividends and subscription rights in question. To hold otherwise would be to discard the carefully worded language of Item 3 as meaningless surplusage. This we may not and will not do: *Horn Estate,* 351 Pa. 131, 136, 40 A. 2d 471; *Hannach's Estate,* 332 Pa. 145, 149, 2 A. 2d 711.

Item 1 does not give the life tenants "all dividends of every kind whatsoever" as appellants state. Settlor empowers the trustee to collect and hold *"all such dividends,* accretions, profits, or benefits of every kind whatsoever *as may be declared,* become due and be payable." He then provides that the trustee shall "pay, lay out and expend such dividends in the purchase of suitable gifts" etc. It is only "such dividends," to wit, "such dividends as may be declared" that are given to the life tenants by the direction to expend. Each of the other items mentioned in the direction to collect and hold, i. e., "accretions," "profits" and "benefits of every kind whatsoever," is carefully excluded. So construing Item 1 there

is no repugnancy between Item 1 and Item 3 to be resolved in appellants' favor. On the contrary, it is clearly evident from a comparison of the two items that settlor recognized a difference between ordinary dividends, which are indisputably income, given to the life tenants by Item 1, and "accretions" such as "extra dividends, increase of capital stock inuring to the benefit of stockholders" and receipts of a similar nature, which may be doubtful receipts with respect to their classification as principal or income: *Chauncey's Estate*, supra, 447. Nor is there merit in the contention that receipt by the life beneficiaries of a fifth cash dividend in the years 1915, 1924 and 1925 involves a course of conduct consistent with their present position. Mere irregularity affords no basis for classifying cash dividends as extra or extraordinary. "There have been exceedingly few cases where a cash dividend has been classified as extraordinary, and in no case has this been done in the absence of unusual circumstances . . . Ordinarily cash dividends have not been treated as extraordinary, except where used to exercise subscription rights, and thus, in reality, stock dividends, or where declared from capital, however produced, or where of an unusual nature": *Nirdlinger's Estate (No. 1)*, 327 Pa. 160, 168, 169, 193 A. 33.

Additional briefs have been filed on the question whether receipt by the life tenants of income on accumulated income violates the Act of April 18, 1853, P. L. 503. While the ruling of the court below on this point has not been assigned as error, and the matter is not properly before us, we have considered it and conclude that no such violation is involved. The Act expressly excludes accumulations for charity from its operation. And the fact that non-charitable beneficiaries participate in the income on the accumulations until the time of distribution is immaterial: *Lennig's Estate*, 154 Pa. 209, 25 A. 1049; *Gray, The Rule Against Perpetuities*, 4th ed.

Decree affirmed. Costs to be paid by appellants.