Anderton *v.* Patterson, Appellant.

Argued March 25, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused May 4, 1953.

*Charles M. Barrickman,* with him *Edwin M. Wallover* and *Buchanan, Barrickman & Wallover,* for appellant.

*Leonard L. Ewing,* with him *Reed, Ewing & Ray,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, April 13, 1953:

On April 10, 1930 John Q. Patterson, the appellant, and his father, John J. Patterson, entered into a written agreement. On the same date John J. Patterson conveyed title to a certain hotel property to John Q. Patterson. These instruments and the subsequent actions of John Q. Patterson formed the basis of a bill in equity which was before this Court in *Anderton v. Patterson,* 363 Pa. 121, 69 A. 2d 87. In that appeal the agreement of April 10, 1930 was construed by this Court to be a declaration of trust whereby John Q. Patterson was constituted a trustee for his father, John J. Patterson, for the life of the father, and after the father's death, for appellant and his two sisters. The trust was held to apply to both the income from the operation of the hotel property and the proceeds from its sale. This Court also approved the removal of John Q. Patterson as trustee and remanded the record for an accounting by him as such trustee for the period from the inception of the trust, April 10, 1930, until the date of his removal as trustee. Pursuant to this order a substituted trustee was appointed and hearings were held before him as auditor.

The hotel property was sold by the substituted trustee at a public sale and the sum of $25,200 was realized. This sum, adjusted by certain charges and credits, was scheduled for distribution by the auditor among Nellie Anderton (sister of John Q. Patterson), the Estate of Pearl Vannoy (deceased sister of John Q. Patterson)

and John Q. Patterson. The share of the latter, however, was charged by the auditor with accrued income due the other beneficiaries and certain costs together amounting to $4,332, and the balance of his share awarded to the Estate of John J. Patterson. In the decree nisi of the court below John Q. Patterson's share of the proceeds of the sale was stated to be $4,706.87, and this amount was awarded to the Estate of John J. Patterson. The final decree of the court below confirmed the decree nisi and in addition ordered John Q. Patterson to pay $9,805.48 to his father's estate. John Q. Patterson appeals from this decree.

The trust agreement of April 10, 1930 provided, inter alia, "WHEREAS, the said John Q. Patterson, in consideration of the execution and delivery of said deed for said premises, and a further sum of One ($1.00) Dollar to him in hand paid, the receipt whereof is hereby acknowledged, has agreed to collect all outstanding debts and credits due to him, the said John J. Patterson that he will borrow, upon first bond and mortgage, upon said premises herein conveyed, the sum of Fifteen thousand ($15,000.00) Dollars or such other sum of money as may be necessary to pay and liquidate the debts due and owing by the said John J. Patterson; that he will rent said premises and from the said rents, issues and profits thereof, pay all taxes, charges and expenses for the upkeep of the same, and in addition to the foregoing, will pay unto the said John J. Patterson the sum of One hundred twenty-five ($125.00) Dollars per month for and during the term of his natural life.". Paragraph 7 of the agreement also provided that John Q. Patterson pay $125 per month to John J. Patterson for life. The court below construed the agreement to require the appellant to pay the sum of $125 per month to his father for life *in addition* to the rental value of the trust property. John J. Patterson

died intestate on February 5, 1945 and the $125 monthly payment was never made to him during his lifetime. The amount due to the Estate of John J. Patterson under this provision of the trust agreement as construed by the court below was $22,250.[1] This amount forms the principal part of the surcharge against the appellant.

In order to construe the contract it is necessary that it be considered as a whole and read in the light of the circumstances under which it was made: *Philadelphia v. Philadelphia Transportation Company*, 345 Pa. 244, 26 A. 2d 909. As stated, this agreement was previously construed by this Court as establishing a trust for John J. Patterson for life with the remainder to be divided equally among John Q. Patterson and his two sisters. There is nothing in the agreement to indicate that John Q. Patterson's one-third share in the remainder formed the consideration for the agreement. Rather the contrary is indicated since other consideration is recited. This being so, it would require a very clear and unambiguous provision in the agreement to lead to the conclusion that it was intended that the trustee pay $125 per month for the privilege of administering the trust. In the absence of such a provision we construe this agreement to require the trus-

---

[1] This $22,250 plus the rental value of the property for the period during which appellant occupied it as his own ($21,087.50) and the proceeds of a $15,000 mortgage obtained by appellant under the trust agreement, amounted to $68,337.50. This sum appeared in the account as the total charges against the trustee. The total of the disbursements by the trustee which were approved by the court en banc was $53,825.15. The difference between these two figures, $14,512.35, was stated to be due to the Estate of John J. Patterson. The trustee was then credited with his net share of the proceeds of sale of the trust property, $4,706.87, supra, so that the surcharge against John Q. Patterson in favor of the Estate of John J. Patterson amounted to $9,805.48.

tee to pay to John J. Patterson $125 per month for life out of income only, and as creating no personal obligation on the part of appellant. This construction is in accord with the statement which appears in the opinion of this Court on the prior appeal, supra, at p. 124: ". . . The fact that the son was to pay his father $125 per month for life, did not imply that the son should keep all surplus, if any, for himself. . . .". The item of $22,250 which appears in the account as due to John J. Patterson under the agreement to pay $125 per month must be disallowed.

Appellant further contends that he should have been allowed an additional credit of $5,642.18 in repayment for debts of John J. Patterson which appellant had paid between December 9, 1929 and April 10, 1930. At the hearing before the auditor appellant presented a schedule of debts which he had paid for John J. Patterson in the amount of $6,845.63. Credit was allowed by the court to the extent of $1,203.45 of this amount, which represented debts paid after April 10, 1930. This was done on the authority of *Drob et al., Admrs. v. Jaffe*, 351 Pa. 297, 41 A. 2d 407, which holds that where a defendant has possession of property owned by a decedent, such defendant is permitted to testify that the property was transferred as security for a debt. The auditor had refused to allow appellant to testify as to debts paid by him prior to the date of the agreement. The court held that such testimony was an attempt to modify the terms of a written agreement and was inadmissible under the rule of *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791, and also that these accounts were not contemplated by the parties to the trust.

The trust agreement provided: ". . . that he [the trustee] will borrow . . . the sum of Fifteen thousand ($15,000.00) Dollars or such other sum of money as

may be necessary to pay and liquidate the debts due and owing by the said John J. Patterson; . . .". It was further provided: ". . . the said John Q. Patterson shall pay . . . all of the just debts due and owing by the said John J. Patterson.". The questions here presented are whether the testimony of appellant concerning debts of his father which he paid prior to the time that the agreement was signed modifies or alters the provision above quoted, and whether that provision contemplated debts owed to the trustee as well as debts owed to other creditors of John J. Patterson. The provision in the agreement makes it apparent that John J. Patterson had outstanding debts. Appellant's testimony was offered merely to identify some of those debts, and rather than altering or modifying the agreement, it would supplement and be consistent with it. The question of credibility remains to be resolved by the court below or the auditor, but the parol evidence rule does not make this testimony inadmissible. If appellant had paid some of the debts of John J. Patterson prior to April 10, 1930, then John J. Patterson would be indebted to appellant to that extent. The debt of John J. Patterson to his son would be a "just debt due and owing by the said John J. Patterson" within the meaning of the trust agreement. There is nothing in the agreement to exclude debts owed by John J. Patterson to the appellant as there might well have been if that had been the intention of the parties. In the absence of such provision, appellant's testimony in this regard is admissible. Since the testimony was not an attempt by the appellant as a plaintiff in his individual capacity to establish a claim against the decedent's estate but rather was directed toward the performance by him as trustee of the conditions under which he held the trust property in accordance with the terms of the trust, John Q. Patterson was not rendered incompetent to testify with

respect thereto by the Act of May 23, 1887, P. L. 158, 28 PS §322. See *Drob v. Jaffe,* supra.

The decree of the court below is set aside and the record is remanded for further proceedings in accordance with this opinion. Costs to be paid out of the fund for distribution.