**Chalfant Trust**

*William Wallace Booth*, for accountants.

*Philip Huss, Jr.*, guardian and trustee ad litem.

RAHAUSER, J., November 17, 1960.—This matter comes before the court at the audit of the trustees' account.

Eleanor McC. Chalfant died May 14, 1940, leaving a last will dated November 30, 1939, and a codicil dated December 5, 1939. Her will provided inter alia:

"Fourth: . . .

"(B) The remaining one-half (½) of the said two (2) parts or shares I give, devise and bequeath unto my Trustees, hereinafter named, IN TRUST, NEVERTHELESS, for the following uses and purposes, that is to say:—To have, hold, manage, care for and control the same, and the net income therefrom to pay unto my sister, MARY CHALFANT McKEE, in convenient installments, for and during the term of her natural life. From and after the death of the said MARY CHALFANT McKEE to pay the said net in-

come therefrom unto my niece, GEORGIANA Mc-KEE BLAIR, in convenient installments, for and during the term of her natural life. At the death of my said sister, Mary or at the death of my said niece, Georgiana McKee Blair, or at my death, whichever shall occur later, the said one-half ($\frac{1}{2}$) part of my Estate shall be divided into as many equal shares as there are then living children of my said niece, Georgiana McKee Blair, and the issue of any child then deceased, the latter of whom shall represent their deceased parent and take as a class absolutely and in fee simple, and if any of said issue be minors his or her share shall be held by my Trustees, hereinafter named, as Guardians for and during the minority of each respectively, and the remaining shares shall continue in trust as aforesaid for the said children of Georgiana McKee Blair and the income thereof shall be paid to each in convenient installments for and during the term of his or her natural life and at his or her death the same shall go, in equal shares, to his or her then lawful issue, per stirpes, and in default of issue as aforesaid then the share of any child so dying shall go, in equal shares, to increase the shares of the surviving children of the said Georgiana McKee Blair, subject to the trust herein created, or their issue, and in case any of them be dead leaving lawful issues so to survive, the latter shall take as a class and represent their deceased parent.

"FIFTH: . . .

"I direct that all stock dividends, stock allotments and rights to subscribe to additional stock or bonds, or to take part in the refinancing of any corporation in which my Estate is interested at the time of my death shall be treated by my Executors and Trustees as Principal and not income."

Mary Chalfant McKee, the first life tenant under the said testamentary trust died October 15, 1951.

Article sixth of her will, dated February 27, 1947, established a life estate for her daughter, Georgiana McKee Blair, with remainder two separate, equal life estates. One of these life estates was for the benefit of Mary Blair Wardrop, and the other was for the benefit of George McKee Blair, grandchildren of Mary Chalfant McKee. Upon the death of the said life tenants, and the wife of said George McKee Blair in the trust for the latter, the trusts terminate and the remainders are payable to the issue of the respective life tenants, with remainder over, in default of issue, to the trust for the other said grandchild of Mary Chalfant McKee, or issue.

Georgiana McKee Blair, the second life tenant under the testamentary trust created by Eleanor McC. Chalfant died May 20, 1959, leaving a will, dated February 12, 1958. Her will directs the distribution of the residue of her estate into five separate trusts, one for the benefit of each of her five grandchildren. The income from each trust is payable to, or for the benefit of, the respective grandchildren for life; the respective remainders pass under special powers of appointment exercisable by the respective grandchildren, and, in default thereof, to issue, per stirpes, or, if none, to the other grandchildren or their issue, per stirpes.

The said Georgiana McKee Blair, the second life tenant, was survived by two children, Mary Blair Wardrop and George McKee Blair. The said Mary Blair Wardrop has four children, only one of whom is of age. The said George McKee Blair has one child; this child is not of age.

Henry Chalfant and Mellon National Bank and Trust Company filed their first and final account as trustees in the estate of Eleanor McC. Chalfant, deceased, trust for Georgiana McKee Blair, on or about April 28, 1960 and the said account came before the

court for audit. The court appointed Philip Huss, Jr., Esq., as guardian ad litem and trustee ad litem for minors and persons in posse having interests in the said trust estate.

At the audit of the said trustees' account the following questions were raised:

1. Is the provision in the will of Eleanor McC. Chalfant directing that stock dividends be treated as principal valid?

2. Does the provision in the will of Eleanor McC. Chalfant directing that stock dividends be treated as principal require that all of the proceeds from the sale of stocks in the testamentary trust shall be treated as principal?

3. If the proceeds of the sales of stock are apportionable between principal and income, should the amounts apportioned to income be allocated between the estates of the two successive life tenants?

The guardian ad litem and trustee ad litem filed exceptions to certain apportionments of the proceeds of the sales of stocks received as stock dividends and stock rights as shown in the trustees' account and petition for distribution. He maintains that the will requires not only that stock dividends be treated as principal, but that all the proceeds of the sales of stock received as stock dividends, or purchased by virtue of stock rights received by the trustees, should be treated as principal. He has also filed exceptions to the allocation of the proceeds of the sale of certain stock rights which the trustees now admit are well taken; these exceptions as to the allocation of the proceeds of the sale of stock rights will be sustained.

The first question raised at the audit, dealing with the testamentary direction to treat stock dividends as principal, gives us little difficulty. While such a direction was formerly invalid, as was decided in Maris' Estate, 301 Pa. 20, 23, the law was changed with the

enactment of the Act of May 25, 1939, P. L. 201, 20 PS §3251, which provides as follows:

"In wills, deeds of trust, or other instruments creating trusts, becoming effective hereafter, provisions directing that extraordinary dividends declared upon corporate stock held in trust, whether payable in cash, stock, rights to subscribe to stock of the issuing or another corporation, or otherwise, or directing that profits realized from such stock, either upon its sale or upon the sale or dissolution of the issuing corporation, or otherwise, shall be treated, in whole or in part, either as principal or income, shall be valid and enforceable."

Testatrix died May 14, 1940, while the said statute was in effect, and accordingly the direction in her will to treat stock dividends as principal was valid.

This brings us to the second question and requires us to determine whether the testamentary direction to treat stock dividends as principal requires that all of the proceeds of the sale of stock received as a dividend should also be treated as principal. The answer to this question lies in the intention of testatrix as expressed in the provisions of her will hereinbefore quoted.

Under the general law relating to apportionment, in effect at the death of the testatrix, the sale of stock by the trustees was an apportionable event: Cunningham Estate, 395 Pa. 1, 7. Accordingly, the proceeds of the sale of any stock in the instant trust would be subject to apportionment unless testatrix has provided to the contrary in her will. Paragraph fifth of the will directs "that all stock dividends, stock allotments and rights to subscribe to additional stock or bonds, or to take part in the refinancing of any corporation in which my Estate is interested at the time of my death shall be treated by my Executors and Trustees as Principal and not income."

This language is quite different from the pertinent language in the trust instrument in Ferguson Trust, 354 Pa. 367, cited by the guardian ad litem and trustee ad litem. This case is pertinent, however, in that it holds that the carefully worded language of the settlor of the trust may not be ignored. In the present case, testatrix' direction not to apportion certain receipts is an indication that other receipts are to be distributed in accordance with the existing law relating to the distribution of such receipts. Certainly this direction in the will does not specifically refer to all of the proceeds of the sale of stock received as stock dividends, nor does it do so by inference. What it does is to place stock received as a stock dividend in the principal of the trust; it gives such stock the same status as principal as if it was owned by testatrix at the time of her death. But having done this, the said testamentary trust is silent as to what shall happen when such stock is sold. Accordingly, the general law of apportionment in effect at the date of death of testatrix, i.e., prior to the Uniform Principal and Income Act of May 3, 1945, P. L. 416, becomes applicable, and the proceeds of the sale of such stock are subject to apportionment. Under the applicable law of apportionment, where stock is sold for a price greater than the intact value and such greater price is due to an accumulation of earnings by the corporation which issued such stock, the proceeds of the sale are apportionable; so much of the selling price as is necessary to preserve the intact value of the stock sold is retained in the principal of the trust and so much of the balance as represents earnings retained by the corporation during the term of the trust goes to the life tenant or tenants. See 4 Hunter's Pennsylvaina rphans' Court Commonplace Book, page 231, citing case.

In the instant trust, the calculations of the trustee

indicate that part of the proceeds of sale represents earnings retained by the corporation involved during the term of the trust, and since testatrix did not direct to the contrary, this part of the proceeds of the sale of stock received as stock dividends must be apportioned to income. This same reasoning is applicable to stock purchased by the trustees pursuant to stock rights received by them. Such stock, so purchased, became a part of the principal of the trust, and when it was sold the proceeds were apportionable under the general law of apportionment in the absence of a direction in the will to the contrary.

Finally, we come to the question of whether or not the amounts of the proceeds of the sales of stock apportioned to income should be allocated between the estates of the two successive life tenants. The Pennsylvania rule of apportionment is an equitable one, and the courts in discussing it have recognized the propriety of apportioning an extraordinary dividend, or the proceeds of sale of stock among successive life tenants: Graham's Estate, 296 Pa. 436; Neafie's Estate, 325 Pa. 561, 568, 570; Nirdlinger's Estate (No. 1), 327 Pa. 160, 164. The cases indicate that apportionment between successive life tenants must be determined by the orphans' court in the sound exercise of its discretionary power based on the particular facts presented.

In the instant case, the facts are relatively uncomplicated and the trustees have calculated the amounts to be apportioned to the estates of the respective life tenants based upon the proportion of the earnings accumulated by the corporations involved during the periods the respective life tenants were entitled to the income from the stock in such corporations held by the trust, to the total accumulated earnings of the company while the respective stocks were held by these trustees. The formula used by the trustees appears

fair and reasonable, and none of the parties in interest, including the guardian ad litem and trustee ad litem, has objected to it. Under these circumstances, the proceeds of the four securities involved, apportioned to income, will be allocated between the estates of the two successive life tenants, in the proportion that the earnings retained by the corporation involved during the respective life estates bear to the total earnings of the corporation during the period from the death of testatrix, or date of purchase of the stock by the trustees, as the case may be, to the date of the respective sales.

A decree of distribution will be drawn in accordance with this opinion.