## Weiss Estate.

Argued January 11, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Mandering, JJ.

Richard L. Grossman, with him Smith, Aker, Grossman, Hollinger & Jenkins, for appellant.

Edward N. Polisher, with him Harold Greenberg, Paul J. Schneider, and Cohen, Shapiro, Polisher, Sheikman & Cohen, for appellees.

Catherine R. Barone, Assistant Attorney General, Dante Mattioni, Deputy Attorney General, and J. Shane Creamer, Attorney General, for Commonwealth, appellee.

Opinion by Mr. Justice Pomeroy, October 3, 1973:

This case requires us to consider the nature and extent of certain discretionary powers given to trustees under a testamentary trust; specifically, whether discretion given the trustees to allocate "all capital gains resulting from the sale or exchange of trust assets" to income or to principal "in accordance with applicable Law" must be exercised under the rules of the Principal

and Income Act, July 3, 1947, P. L. 1283, as amended, 20 P.S. §3470.1 et seq., or whether that discretion can be exercised without reference to that Act. We hold the latter.

Abram H. Weiss died testate on March 6, 1968. His will, dated September 9, 1963, bequeathed all personal effects and automobiles to the testator's wife, Helen L. Weiss, and divided the balance of the estate into two separate trusts, Trust A and Trust B.

Trust A was a "marital deduction trust" designed to take full advantage, through the use of the so-called "formula" approach, of the marital deduction permitted under the Internal Revenue Code of 1954, as amended, for federal estate tax purposes. The income therefrom was to be paid to the wife during her lifetime; the corpus was subject to the wife's power to dispose of all or part thereof during her lifetime, or, upon her death, by testamentary power of appointment. Should the wife's income from all sources be less than $50,000 per annum after taxes, or should payments of principal be required by illness or emergency or to maintain the wife in her accustomed standard of living, then invasion of principal was authorized. Should the testator's wife predecease him—which proved not to be the case —then the gift to the wife would lapse and the amount which would have funded Trust A would pass to the heirs of the wife in accordance with the intestate laws of Pennsylvania then in force.

Trust B was to be composed of the residue of the estate. As to it, the testator directed that the trustees pay the income "in such proportion and in such manner" as they might see fit to fourteen named beneficiaries (including his wife, Helen L. Weiss) during the lifetime of the wife. Upon the death of Helen Weiss (an event which has not yet come to pass), the corpus and any undistributed, accumulated income is to be paid over to the A. H. and Helen L. Weiss Foundation,

a charitable organization created by testator and his wife in 1952. Under Trust B the trustees are given no specific power to invade corpus. The will provided for no gift to the thirteen named income beneficiaries of Trust B (other than to Helen Weiss) should the wife predecease the testator; in such event, the charitable foundation would take the residuary estate immediately. By a codicil dated January 5, 1966, however, the testator made specific pecuniary bequests, should his wife predecease him, to those persons; they range from $2500 to $15,000. By a second codicil dated February 1, 1966, the testator added a specific bequest of $500,000 (but not more than 25% of his adjusted gross estate for federal estate tax purposes) to the Federation of Jewish Agencies of Greater Philadelphia for construction of a facility for care and treatment of the aged.

Testator's will set forth in some detail the administrative powers of the trustees under the above two trusts. Several of those provisions which pertain to Trust B give rise to the instant controversy:

"EIGHTH: I direct that my Executors and Trustees, in addition to and not in limitation of any authority given them by Law, shall have the following powers:

. . .

"*C*. To retain all stocks, bonds and investments owned by me, and to invest and reinvest in other stocks, bonds and investments, without being confined to what are known as 'legal investments,' and to sell and transfer the same, whether in person or by attorney, without liability on the part of the purchasers to see to the application of the purchase or consideration monies. The purchase of life insurance and annuities for the benefit of any trust estate is authorized hereunder.

"*D*. To purchase securities at a premium and to exercise any option to subscribe for stocks, bonds or other investments; and to grant options and proxies and

to enter into voting trust agreements, affecting any estate investments.

. . .

"*K.* As to all trusts, except that set up in sub-paragraph 'FOURTH A' of this Will, which is intended to qualify as part of the marital deduction for my wife, HELEN L. WEISS, the Trustees in their sole discretion, shall have the power to allocate all capital gains resulting from the sale or exchange of trust assets, to income or to principal, or partly to either, in accordance with applicable Law, and the determination of the Trustees in this respect shall be binding upon all beneficiaries; provided, further, that with respect to all trusts other than Trust A, if the Trustees invest in the shares of a regulated investment company, a real estate investment trust or similar entity providing favorable tax treatment under the Internal Revenue Code, notwithstanding that the Trustees are given an election to receive capital gain dividends of such entity or entities in cash or in additional shares, or that capital gain dividends are distributed to the Trustees in cash without the opportunity of any election, such capital gain dividends shall be deemed principal; and further, all corporate distributions made to the Trustees in the shares of the distributing corporation, however described or designated by the distributing corporation, shall be deemed to be principal."

The appellee executors and trustees filed a federal estate tax return in which they claimed a charitable deduction of $1,053,865.07, the present value, as they calculated it, of the remainder under Trust B. The Internal Revenue Service, however, disallowed the deduction and issued a notice of deficiency. The executors have appealed to the United States Tax Court. where, we are informed, the case is now pending.

Because the deductibility of the charitable remainder turns largely on questions of state law, *Estate of*

*Stewart v. Commissioner,* 436 F. 2d 1281, 1286 (3d Cir. 1971), the executors and trustees filed in the Orphans' Court Division of Montgomery County a petition for declaratory judgment in which they named and served as respondents the United States (Internal Revenue Service), the Commonwealth of Pennsylvania, all named income beneficiaries under Trust B, and the charitable remainderman under Trust B.[1] Appearances were entered by the Commonwealth of Pennsylvania and eleven of the fourteen income beneficiaries. The United States did not answer the petition or appear either in this Court or in the court below.

The auditing judge resolved the petitioners' questions under Pennsylvania law as follows:

"(1) The discretion granted the trustees of Trust B under paragraph Eighth K 'to allocate all capital gains resulting from the sale or exchange of trust assets, to income or to principal, or partly to either, in accordance with applicable Law' must be exercised in accordance with section 3(2) of the Principal and Income Act of 1947.

"(2) The discretion granted the trustees of Trust B under paragraph Eighth D to invest in securities at a premium is limited by section 6 of the Principal and Income Act under which apportionment of trust receipts derived from such an investment would require amortization of the premium.

"(3) The discretion granted the trustees of Trust B under paragraph Eighth C to invest and reinvest without being limited to 'legal investments' does not encompass the power to invest in assets 'which by their

---

[1] See Uniform Declaratory Judgments Act, June 18, 1923, P. L. 840, §4, 12 P.S. §834: "Any person interested as . . . an executor [or] trustee . . . may have a declaration of rights or legal relations in respect thereto . . . [t]o determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

nature might deplete principal to the detriment of the charitable remainderman'." The lower court concluded that there existed under Pennsylvania law "a measurable standard for the exercise of [the trustees'] discretionary powers to allocate capital gains and, for Federal Estate Tax purposes renders the value of this charitable remainder presently ascertainable."

Appellant is an income beneficiary under Trust B and a brother-in-law of the deceased. He challenges only point (1) of the lower court's opinion, which would bind the trustees in allocating "all capital gains . . . to principal or income . . . in accordance with applicable Law" to the provisions of the Principal and Income Act.

## I.

It should be made clear at the outset that we are asked to decide *only* a question of state law, i.e., the powers of the trustees with respect to treatment of capital gains resulting from the sale or exchange of trust assets. It is not for the courts of this State to intimate views as to Federal tax questions, nor to shape our law of trusts with an eye to the definition of tax-related terms as found in the trust. As this Court recently observed: "[I]t is incontestable that almost every settlor and testator desires to minimize his tax burden to the greatest extent possible. However, courts cannot be placed in the position of estate planners, charged with the task of reinterpreting deeds of trust and testamentary dispositions so as to generate the most favorable possible tax consequences for the estate. Rather, courts are obliged to construe the settlor's or testator's intent as evidenced by the language of the instrument itself, the overall scheme of distribution, and the surrounding circumstances." *Benson Estate,* 447 Pa. 62, 72-73, 285 A. 2d 101 (1971). Nevertheless, it will be helpful, as background, to outline the Federal law under which this question arises.

Section 2055 of the Internal Revenue Code of 1954[2] permits a deduction for estate tax purposes of "[a]ll bequests . . . to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes . . . no part of the net earnings of which inures to the benefit of any private stockholder or individual. . . ." It has long been provided by regulation of the Commissioner of Internal Revenue that to qualify for this deduction, the value of the charitable remainder must be "presently ascertainable."[3] Where the trust provision empowers the trustee to invade corpus for the benefit of a noncharitable income beneficiary and creates no measurable standards for the exercise of that power, it is clear that no deduction is allowable. See, e.g., *Commissioner v. Estate of Sternberger*, 348 U.S. 187, 99 L. Ed. 246 (1955); *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 93 L. Ed. 259 (1949); *Merchants Nat'l Bank of Boston v. Commissioner*, 320 U.S. 256, 88 L. Ed. 35 (1943).

In Revenue Ruling 60-385, Cum. Bull. 1960-62, at 77, the Commissioner announced that if a trust instrument provides that trust receipts representing capital gains shall or may be treated as income and paid to a life tenant, or if the instrument could be so interpreted

---

[2] Section 201(e) of the Tax Reform Act of 1969, P. L. 91-172, Title II, §201(e)(1), Dec. 30, 1969, 83 Stat. 562, 26 U.S.C. §664(d) (1970), which requires that a trust pay either a fixed dollar amount or 5 percent of the net fair market value of the trust assets to the life beneficiary in order that the value of the charitable remainder be deductible is not applicable here because Abram H. Weiss died before the date of enactment of that law.

[3] "Treas. Reg. §20.2055-2: Transfer Not Exclusively for Charitable Purposes:—(a) Remainders and similar interests. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the non-charitable interest."

under the applicable state law, then it is possible for the trustee in effect to diminish the corpus, thus making the value of the remainder at some future date unascertainable. The interest of the charitable remainderman would therefore not be severable from that of the noncharitable income beneficiaries, and hence no deduction would be permissible. Although it does not immediately appear how discretion to pay out as income an increment to the trust corpus would *deplete* corpus, the Commissioner's theory, as summarized by the Fourth Circuit, would appear rational: "To illustrate how substantial invasion may occur, the government suggests, in regard to the power to invest in any type of property in any proportion, the possibility that the trustees may invest in a wasting asset without making provision for amortization of the asset or other reserve for the return of corpus. In regard to the power to allocate and apportion expenses and receipts, the government contends that this power may be used to divert corpus to the income of the beneficiary if the trustees, in the exercise of their uncontrolled discretion, charge a premium on securities purchased at a premium to corpus, but treat the full return on such securities as income payable to the life beneficiary. The government also suggests that the trustees, in the exercise of their uncontrolled discretion, could elect to allocate stock dividends to the income beneficiary so that, again, a portion of the value of the corpus would be diverted to the noncharitable life income beneficiary. Finally, the government argues that the trustees might even allocate capital gains to income but capital losses to principal since they are vested with 'uncontrolled discretion' to make allocations, notwithstanding that both gain and loss on the sale of investment assets would ordinarily be allocable to corpus. . . ." *Greer v. United States,* 448 F. 2d 937, 946 (4th Cir. 1971).

## II.

The language with which we are most directly concerned is found in paragraph EIGHTH K of Abram Weiss' will: "[T]he trustees, in their sole discretion, shall have the power to allocate all capital gains resulting from the sale or exchange of trust assets, to income or to principal, or partly to either, in accordance with applicable Law, and the determination of the Trustees in this respect shall be binding upon all beneficiaries." It is the contention of the trustees, accepted by the lower court, that the phrase, "in accordance with applicable Law," is a reference to our Principal and Income Act, Act of July 3, 1947, P. L. 1283, as amended, 20 P.S. §3470.1 et seq.[4] Appellant, on the other hand, contends that the quoted language *frees* the trustees from the provisions of the Principal and Income Act and cites in support the following language of Professor Scott: "By the terms of the trust the trustee may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered to determine what expenditures should be paid out of income and what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. *The mere fact that the trustee does not follow the rules which*

---

[4] Section 3 (2) of that Act provides as follows: "All receipts of money or other property paid or delivered as the consideration for the sale, or other transfer, not a leasing or letting of property, forming a part of the principal . . . shall be deemed principal unless otherwise expressly provided in this act. Any profit or loss, resulting from any change in form of principal, shall enure to or fall upon principal, unless otherwise expressly provided in this act." 20 P.S. §3470.3 (2).

*would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules."* A. W. Scott, Law of Trusts, §233.5, at 1932 (3d ed. 1967) (emphasis added).

Under Section 2 of the Principal and Income Act of 1947, 20 P.S. §3470.2, the testator here was at liberty to direct his trustees to allocate in a manner other than that of the Act: ". . . Provided, that the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee, or other person, to do so and such provision and direction, where not otherwise contrary to law, shall control, notwithstanding this act." The intention to grant such discretionary power to the trustee must be clearly expressed by the donor. *Dunham Trust,* 433 Pa. 273, 249 A. 2d 531 (1969) ; *McEldowney Estate,* 415 Pa. 87, 202 A. 2d 100 (1964).[5] Appellees contend that if the testator's phrase "in accordance with applicable Law" is not a clear reference to the Principal and Income Act, then it is entirely unclear to what other "Law" it might refer. Consequently, they argue, applying the holding of the above two cases, the Principal and Income Act should be held to be the standard to be followed by the trustees. Their "discretion" evidently would then be only a discretion to apply that Act in good faith and without palpable error.[6]

---

[5] In *Dunham Trust* we observed that: "[I]t is clear that the phrase which appellants claim clearly expresses the settlor's intent does not approach the clarity required by §2 of the Principal and Income Act. In McEldowney Estate, * * *, this Court held that in order to give effect to §2, the settlor must have 'clearly expressed an intention' to allocate between principal and income." 433 Pa. at 280.

[6] One patent difficulty with this approach is that it arguably produces the result which would have obtained had the testator

We note, however, that the testator here did not authorize his trustees to allocate *receipts* as between principal and income; he authorized them "to allocate all *capital gains* resulting from the sale or exchange of trust assets, to income or principal . . . in accordance with applicable Law." A "capital gain" is a term of common meaning. It refers to a receipt regarded as an *increment to the property* which earned it, rather than as income *from* the property. Section 3(2) of the Principal and Income Act of 1947, for example, classifies as *principal* (i.e., gain to the capital) "[a]ll receipts of money or other property paid . . . as the consideration for the sale, or other transfer . . . of property forming a part of the principal. . . ." The testator here empowered his trustees to distribute as income exactly that kind of receipt regarded both under common understanding and under the Principal and Income Act as "capital gain." We cannot see in this language anything other than a clear direction by the testator releasing his trustees from the rules of the Principal and Income Act regarding sale or exchange of trust assets. We are obliged to conclude, accordingly, that the learned auditing judge erred in deciding otherwise.

### III.

Because we have disagreed with the lower court on the question whether the trustees are bound by the Principal and Income Act, it becomes necessary for us to say whether Pennsylvania law would provide any standard by which the trustees' discretion under paragraph EIGHTH K of the will might be governed. We hold that there exists such a standard.

---

omitted this provision altogether. In determining intent, courts attempt to give meaning to all terms of the writing, and constructions which make surplusage of a phrase such as is involved here are disfavored. *Wolters' Estate*, 359 Pa. 520, 59 A. 2d 147 (1948) ; *Ferguson Trust*, 354 Pa. 367, 47 A. 2d 245 (1946) ; *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 20 A. 2d 768 (1941).

The Restatement of Trusts succinctly states a cardinal principle of trust law which expresses the law of Pennsylvania: "When there are two or more beneficiaries of a trust, the trustee is under a duty *to deal impartially* with them." Restatement 2d, Trusts, §183 (1959). See *Neafie's Estate,* 325 Pa. 561, 191 A. 56 (1937); *Thompson's Estate,* 262 Pa. 278, 281, 105 A. 273 (1918) ("A trustee has no right to take sides as between the life tenants and remaindermen"). See also *Longbotham's Estate,* 346 Pa. 94, 29 A. 2d 481 (1943). The same rule applies where the beneficiaries are successive, and occupy the positions of income beneficiary and remainderman. Restatement 2d, Trusts, §232. In its comment to Section 183, the American Law Institute remarks that "[b]y the terms of the trust the trustee may have discretion to favor one beneficiary over another. The court will not control the exercise of such discretion, except to prevent the trustee from abusing it."

Whether or not the testator has empowered his trustees here to favor the named income beneficiaries over the charitable remainderman, or vice versa, is a question of intent. *Pew Trust,* 411 Pa. 96, 191 A. 2d 399 (1963); *Clark v. Clark,* 411 Pa. 251, 191 A. 2d 417 (1963); *Scholler Trust,* 403 Pa. 97, 169 A. 2d 554 (1961). That intent must be derived from an examination of the entire will, viewed in the light of the circumstances of the testator. *Anderton v. Patterson,* 373 Pa. 441, 96 A. 2d 111 (1953); *Wolters Estate,* 359 Pa. 520, 59 A. 2d 147 (1948).

Testator here gave his trustees power to distribute as income that which otherwise would be regarded as principal. It does not follow, however, that testator thereby evidenced a desire to have the income beneficiaries favored. There are reasons apart from favoritism which would explain the presence of such a provision, the most obvious of which being a desire to pro-

vide flexibility in the administration of the trust. We note that in the same paragraph EIGHTH K, the trustees are directed to treat as *principal* two types of trust receipts otherwise classifiable as *income*: all corporate distributions, however small, made in the shares of the distributing corporation;[7] and all capital gain distributions of regulated investment companies or real estate investment trusts, notwithstanding the fact that an election is available to receive the distribution in cash.[8] This clear allocation to principal of two items which would ordinarily be income offsets the power of the trustees to allocate to income, in their discretion, capital gains realized on the sale or exchange of trust assets.

We note in addition that the named beneficiaries will actually receive income only "in such proportions and in such manner as the Trustees shall deem necessary or desirable," and then only during the lifetime of another person (testator's wife). The trustees, who are directed to deliver to the charitable remainderman not only the corpus but also "[a]ny income not so distributed," thus have a discretionary power to pay to the income beneficiaries less than all the income of the trust, however the word "income" may be defined. Indeed, the predecease of testator's wife would have totally defeated all the Trust B income benficiaries' interests and would have passed the corpus, undiminished, to the charitable remainderman.[9]

---

[7] Under the Principal and Income Act of 1947 stock dividends of 6% and less made in the stock of the distributing corporation would be regarded as income, not principal. 20 P.S. §3470.5(1).

[8] The Principal and Income Act of 1947 would similarly classify as income all stock distributions received where an option was available to take cash instead. 20 P.S. §3470.5.

[9] After the codicil of January, 1966, the predecease of the wife would have resulted in direct bequests to the individual legatees who might have been income beneficiaries of Trust B, but these

We therefore think that testator's will, read in its entirety, provides no authority whereby the trustees might favor the income beneficiaries to the prejudice of the remainder interest. If anything, a stronger case can be made for the converse proposition.

Nor do we perceive any inconsistency between this view of the will and our concomitant holding that the trustees have authority to distribute as income that kind of trust receipt which the Principal and Income Act of 1947, §3(2), would label principal. The short of the matter is that while not bound by the Act, the trustees must still be governed by the overriding concept of fairness and impartiality, and must administer the trust with due regard to the respective interests of income beneficiaries and remaindermen.[10]

In the posture of this appeal, we are unable to say anything more specific than what we have already said. As Professor Scott writes, "[t]he trustee . . . ordinarily has considerable discretion in preserving the balance between the beneficiaries." A. W. Scott, Law of Trusts, §232, at 1896 (3d ed. 1967). Absent a concrete factual situation as against which the trustees' performance of this duty of impartiality is to be gauged, statement of the general principle must suffice.

The decree of the lower court entered July 11, 1972 with respect to paragraph EIGHTH K of the will of Abram H. Weiss, deceased, is hereby modified to accord with this opinion, and, as so modified, the decree is affirmed. Costs on the estate.

---

bequests were only small fractions of the amount of the gift to the charitable remainderman.

[10] The United States District Court for the Eastern District of Pennsylvania (NEWCOMER, J.) recently decided a question of the powers of a trustee under Pennsylvania law and reached a result similar to that of the case at bar. *Provident Nat'l Bank v. United States*, Civil Action No. 69-1237 (E.D. Pa., Feb. 2, 1973).

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent from the Court's disposition and would affirm without modification the decree of President Judge TAXIS of the Orphans' Court Division of the Court of Common Pleas of Montgomery County.

Mr. Justice NIX joins in this dissenting opinion.