508 A.2d 1237

**ESTATE OF Florence Foerderer TONNER.**

**Appeal of LUTHERAN CHURCH OF THE HOLY COMMUNION.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1985.

Filed May 5, 1986.

2

S. Jonathan Emerson, Philadelphia, for appellant.

Before WIEAND, CERCONE and ROBERTS, JJ.

ROBERTS, Judge:

This appeal concerns two charitable trusts; one involving real property and the other an endowment trust to finance the maintenance and operation of the real property. The question is whether the endowment trust terminates when the trustee of the real property is substituted before the purposes of the trust are carried out. The Philadelphia County Court of Common Pleas ruled that the trust settlor did not intend termination before the purposes of the en-

dowment trust were complete; we agree and accordingly affirm the court's decree.

In October, 1967, Florence Foerderer Tonner (Mrs. Tonner) made a gift in three parts to the Lutheran Church of America (LCA). She conveyed by deed a remainder interest in her family's estate, Glen Foerd, located in the Torresdale section of Philadelphia. The deed provided that the property was to be used

> ... as a place of spiritual study and for the advancement of the cultural and intellectual life of the Lutheran Church in America to the enrichment of its members, lay and clerical, for such length of time as Grantee shall deem advisable in the performance of its church functions, and thereafter to be used for the benefit and service of the entire Torresdale general community.

Also, Mrs. Tonner established a $500,000 endowment trust for the maintenance of Glen Foerd and gave the LCA the contents of the mansion located on the estate, which included an art collection and a library.

Mrs. Tonner died in 1971. After renovation, the LCA began to use Glen Foerd as a conference center in 1973. By 1981, after financial losses in each year, the LCA determined that it was no longer advisable to use Glen Foerd in furtherance of its church functions. Accordingly, it filed a petition for modification of a charitable trust under 20 Pa.C.S.A. § 6110, seeking permission to sell Glen Foerd and to use the proceeds to support spiritual study and the cultural and intellectual life of the church. The Court of Common Pleas denied the petition and substituted the City of Philadelphia as trustee of the property, reasoning that "the Church has evidenced ... a reluctance to (maintain Glen Foerd) for the benefit of the Torresdale general community." Upon the substitution of the City, the Church of the Holy Communion sought to terminate the $500,000 endowment trust, pursuant to the termination clause in the trust agreement. The Court of Common Pleas rejected this effort as well, ruling that Mrs. Tonner intended the endowment trust to be part of a single gift that included the real

4

property and the contents of the estate, which was not to terminate until the alternative purpose of the gift (i.e. using Glen Foerd to benefit the Torresdale general community) was carried out. The subject of this appeal is the decision not to terminate the endowment trust.

Appellant argues that the substitution of trustees triggers the endowment trust's termination provision, which directs:

This trust shall terminate in the unlikely event that Glen Foerd shall cease to be used *by the Church* either (1) as a facility devoted to spiritual repose, meditation and fellowship and as a center for religious study and for the advancement of the cultural and intellectual life of the Church to the enrichment of its members, lay and clerical, or (2) for the service of the Torresdale general community .... Upon termination, the Trustee shall distribute the entire principal and accumulated income, if any, to the Lutheran Church of the Holy Communion, which is now located at Chestnut and Van Pelt Streets, Philadelphia, Pennsylvania, where Settlor has been accustomed to worship. (emphasis added)

The question of whether the endowment trust terminates upon the substitution of trustees depends, of course, on the intention of the settlor, *Estate of Krebs*, 334 Pa.Super. 635, 639, 483 A.2d 919 (1984). Although it is preferable that the settlor's intent be gathered from the language of the trust agreement, a court will look beyond the trust agreement, to extrinsic evidence, if it cannot discern the settlor's intent from the text of the agreement, *Estate of Taylor*, 480 Pa. 488, 494, 391 A.2d 991 (1978). A court will not disregard plain words as meaningless, unless after careful consideration of the entire instrument it is not possible to give them any meaning, *Mayer's Estate*, 289 Pa. 407, 410, 137 A. 627 (1927). Indeed, the law favors a construction which gives effect to all parts of a trust and does not reject any language as surplusage, *In Re Ferguson*, 354 Pa. 367, 371, 47 A.2d 245 (1946); *Horn Estate*, 351 Pa. 131, 136, 40 A.2d 471 (1945). Therefore, "dispositive

clauses must be construed in connection with explanatory ones, for thus only can effect be given to the entire instrument," *Bingaman's Estate*, 281 Pa. 497, 508, 127 A. 73 (1924) (citation omitted).

■ Here, the trust agreement indicates that Mrs. Tonner's overriding intent was that the endowment trust be used for the maintenance and operation of Glen Foerd. The trust preamble, in particular, supports this conclusion. There, Mrs. Tonner described the purposes of the real property trust and the endowment trust. With regard to the latter, she provided:

> In order to secure the full utilization of Glen Foerd for the intended purposes and pursuant to Settlor's promise to provide an endowment fund of $500,000 Settlor does hereby establish this Trust as the endowment fund to be devoted after the death of the Settlor to maintain, operate and otherwise sustain the dwelling and adjacent grounds known as Glen Foerd.

This passage demonstrates that Mrs. Tonner's intent in providing the endowment trust was to finance the maintenance and operation of Glen Foerd after her death, for the "intended purposes" underlying the gift of Glen Foerd. Those purposes, according to the second paragraph of the preamble, were first for church functions, and then for the benefit of the Torresdale general community, when the use for church functions became "impractical or impossible". Even the LCA concedes that use of the property for church functions is now impractical, but, as the auditing judge noted, "there has been no showing that the property cannot be maintained ... for the benefit of the Torresdale general community." [1]

1. Read separately from the preamble, the termination clause suggests that the church may terminate upon completion of either of the trust's purposes. In proper context, however, it appears that the settlor intended both purposes to be fulfilled before the endowment trust could be terminated. *See Farmers Trust Co. v. Bashore*, 498 Pa. 146, 150, 445 A.2d 492 (1982) (provision of trust instrument should not be read in isolation, but in the context in which it appears).

The income distribution clause further supports the conclusion that Mrs. Tonner intended the endowment fund to benefit the maintenance of the property. It provides:

... [D]istributions are to be applied first to the upkeep, maintenance and operation of the home and grounds of Glen Foerd, and to the establishment of such reserve funds for maintenance, repairs and proposed renovations from time to time as may be reasonably required, so that insofar as is possible Glen Foerd may be maintained in the same condition as when the Church first shall come into possession thereof. Any distributions of net income not required for the foregoing purposes shall be expended for the expansion of the library or art collection to be given under a separate instrument to the Church.

This clause, which is consistent with the statement of purpose in the preamble, provides specific evidence of how Mrs. Tonner intended the endowment trust to be used. In the entire provision, there is nowhere reflected an intent to benefit any purpose other than maintaining Glen Foerd or expanding the library and art collection.

Appellant takes the position that the last sentence of the distribution clause indicates Mrs. Tonner's intent to benefit the church since it suggests that "income could be expended in connection with items not directly a part of the Glen Foerd mansion and grounds." This argument overlooks two critical facts. First, the library and art collection essentially were part of the same gift as the endowment and the property itself. *Cf. Randall's Estate,* 341 Pa. 501, 508, 19 A.2d 272 (1941). Accordingly, even if we accept the proposition that Mrs. Tonner intended a benefit beyond Glen Foerd, it is clear that she did not intend to endow a purpose beyond the scope of her gift. Moreover, according to the terms of the distribution clause, income from the endowment is to be spent on the art collection or library only if funds remain after expenditures on maintenance, operation or renovation. As such, it is unlikely that Mrs. Tonner intended to benefit a secondary purpose, at least until her stated primary purpose had been fulfilled.

Appellant also contends that the use of the words "by the church" in the termination clause, and elsewhere,[2] evidences Mrs. Tonner's intent that the endowment trust should benefit the church, not Glen Foerd. While it is clear that Mrs. Tonner gave the endowment *to the church*, she did so in contemplation that the church would use the fund to maintain Glen Foerd, either for its benefit or for the benefit of the community.[3] The appellant's interpretation would allow the church to use the endowment for purposes other than those clearly stated. Accordingly, to allow the church to benefit from the endowment trust before the alternative purpose of benefitting the community has been achieved would be contrary to Mrs. Tonner's intent.

Decree affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

I respectfully dissent.

The conveyance of real estate known as "Glen Foerd" by Florence Foerderer Tonner to the Lutheran Church in America was, according to the deed of transfer, "for such length of time as [the Lutheran Church in America] shall deem advisable in the performance of its church functions, and thereafter to be used for the benefit and service of the entire Torresdale general community." Pursuant to this language, when the Lutheran Church in America determined that it could no longer maintain Glen Foerd, either

2. The other phrases which appellant urges us to consider include the title ("... FOR THE MAINTENANCE OF GLEN FOERD *BY THE LUTHERAN CHURCH IN AMERICA*"), the preamble ("... Glen Foerd shall be devoted *by the church* to the ... community"), and Article V ("the Trustee may ... audit ... records dealing with the receipt and disbursement *by the church* of the income"). (emphasis added)

3. Appellant argues that it should benefit from the endowment trust since the LCA, not Mrs. Tonner, demanded the creation of the trust. But, as the trial court correctly noted, "the matter at issue is the intention of the settlor, and not that of the church". Moreover, even if we construe the trust in light of the intents of both parties, it is clear Mrs. Tonner acceded to the endowment demand only because the LCA promised to use it to maintain Glen Foerd.

for church or community purposes, the Orphans' Court of Philadelphia County quite properly substituted the City of Philadelphia as trustee to hold and maintain the real estate for community purposes.

However, the endowment trust, which is the subject of the present dispute, was intended to serve a purpose different than that of the gift of Glen Foerd. As is apparent from the correspondence preceding its creation and from the terms of the trust agreement itself, the endowment trust was intended to provide income to the Lutheran Church in America to assist the Church in maintaining Glen Foerd. When this real estate ceased to be used by the Lutheran Church in America, then and in that event, the endowment trust was to terminate. Upon termination in this manner, the trustee was to "distribute the entire principal and accumulated income, if any, to the Lutheran Church of the Holy Communion ... where settlor has been accustomed to worship." This endowment, in my judgment, was not intended to survive the termination of the Church's ownership and maintenance of Glen Foerd.

When Florence Foerderer Tonner suggested a wish to convey Glen Foerd to the Lutheran Church in America, the Church expressed reluctance to accept her gift because the costs of maintaining Glen Foerd were substantial and would have constituted a severe drain on the Church's resources. By letter dated January 5, 1967, Mrs. Tonner wrote to Dr. Franklin Clark Fry, then president of the Lutheran Church in America, as follows:

I have been given to understand that the Officers and Executive Council of the church could not, in the light of other commitments, consider undertaking the upkeep and operation of a place like Glen Foerd without the support of an endowment fund for that specific purpose. The amount of $500,000 has been proposed. I see justification for the church's view in this regard and I have concluded in my own mind that if the church agrees to accept Glen Foerd an endowment gift of that amount will be provided.

From this it seems clear that, having chosen the Lutheran Church in America as the entity to receive Glen Foerd, Mrs. Tonner wished to assist the Church in maintaining and operating the real estate.

This was confirmed by the language of the written endowment trust. Indeed, even the title affixed to the endowment trust stated that it was "The Florence Foerderer Tonner Trust *for the Maintenance of Glen Foerd by the Lutheran Church in America.*" (Emphasis added.) The endowment trust was to terminate *"in the unlikely event that Glen Foerd shall cease to be used by the Church* [.]" [1] The trust instrument contained no provision for the payment of income to any owner or user of Glen Foerd other than the Lutheran Church in America.

My examination of the correspondence preceding the endowment trust and the language of the endowment trust agreement itself has not disclosed an intent by the settlor to benefit a person or entity other than the Lutheran Church in America. I do not discern from the language used, either expressly or by necessary implication, an intent by the settlor to establish a perpetual care fund to benefit Glen Foerd, or an intent to benefit the City of Philadelphia, or the Torresdale community, or any other trustee-owner of Glen Foerd. The endowment was intended to assist the Lutheran Church in America while it owned and maintained Glen Foerd; and the endowment trust was to terminate "in

1. More fully, the termination clause of the endowment trust provided as follows:

> This Trust shall terminate in the unlikely event that Glen Foerd shall cease to be used by the Church either (1) as a facility devoted to spiritual repose, meditation and fellowship and as a center for religious study and for the advancement of the cultural and intellectual life of the Church to the enrichment of its members, lay and clerical, or (2) for the service of the Torresdale general community.... Upon termination, the Trustee shall distribute the entire principal and accumulated income, if any, to the Lutheran Church of the Holy Communion, which is now located at Chestnut and Van Pelt Streets, Philadelphia, Pennsylvania, where settlor has been accustomed to worship.

Trust, § IV. Distribution of Principal.

the unlikely event that Glen Foerd shall cease to be used by the Church."

In my opinion, the endowment trust should now be terminated according to its terms. The principal and accumulated interest should be distributed to the Church of the Holy Communion, the settlor's church, in accordance with her wishes. Because the majority affirms an order which defeats this expressed intent and deprives the local church of the settlor's intended gift, I respectfully dissent.